0293

Ethel EMERSON, Respondent, v. Dillard POWELL, James Mason, Donald Scott, William C. Wilson, Sr., D.V.W., Inc., Continental Homes, Inc., S.P.M. Investments, Inc., Sunbelt Development Corporation, Allan Dameron and Gloyd Vestal, of whom Dillard Powell, James Mason, Donald Scott, and S.P.M. Investments, Inc. are Appellants.

(321 S. E. (2d) 629)

Court of Appeals

*Michael W. Battle*, of *Lovelace & Battle*, Conway, *for appellant.*

*John R. Clarke*, North Myrtle Beach, and *J. M. Long, Jr.*, Myrtle Beach, *for respondent.*

Heard April 23, 1984.

Decided Oct. 4, 1984.

GOOLSBY, Judge:

The respondent Ethel Emerson initiated this action for fraud and deceit against four corporations, D.V.W., Inc., Continental Homes, Inc., S.P.M. Investment, Inc., and Sunbelt Development Corporation, and six individuals, Donald Scott, Dillard Powell, James Mason, Allan Dameron, Gloyd Vestal, and William C. Wilson, Sr. Vestal was found to be in default. The trial judge, on his own motion, granted Continental Homes a directed verdict. The jury returned a verdict for actual damages in the amount of $45,000 solely against the appellants S.P.M., Scott, Powell, and Mason. Motions for involuntary nonsuit, directed verdict, judgment *non obstante veredicto (n.o.v.)*, new trial, and new trial *nisi* were all denied by the trial court.

Although S.P.M., Scott, Powell, and Mason raise several issues on appeal, we need only deal with the question concerning the sufficiency of the evidence as to fraud. We hold the trial judge erred in refusing the appellants' motion for directed verdict and therefore reverse the judgment below.

Emerson alleges in her complaint that she contracted with D.V.W. in January, 1979, to purchase four apartments at Royal Arcadian Condominiums, that she advanced D.V.W. a total of $20,000 pursuant to the contracts of sale, and that she did not receive the apartments because they were never con-

structed. Her complaint also alleges that Dameron, Vestal, Wilson, D.V.W., and Sunbelt, as partners, represented to her that Seacrest Villas would be constructed, that S.P.M., Scott, Powell, and Mason thereafter entered into a partnership with D.V.W. for the construction of Seacrest Villas, and that S.P.M., Scott, Powell, and Mason represented to her that she would either "be paid in full for monies expended" by her or would receive the "condominium of her choice at Seacrest Villas." Nine of the apartments at Seacrest Villas were allegedly constructed as of the date suit was brought. Although her complaint nowhere expressly alleges that she never received an apartment at Seacrest Villas, a clear inference to that effect can be drawn for the complaint's allegations.

The complaint alleges no action for breach of contract in addition to the action for fraud and deceit. Instead, it alleges an action for specific performance and demands the immediate conveyance to her of an apartment at Seacrest Villas. At trial, however, Emerson took a voluntary nonsuit with prejudice as to the action for specific performance and elected to proceed on the action for fraud in an effort to recover $80,000 in damages.

In determining the appellants' motions for involuntary nonsuit, directed verdict, and judgment *n.o.v.*, the evidence and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the nonmoving party. *Skipper v. Hartley*, 242 S. C. 221, 130 S. E. (2d) 486 (1963); *Causey v. Blanton*, S. C., 314 S. E. (2d) 346 (S. C. App. 1984).

Regarding the appellant's argument as to the sufficiency of the evidence to support a verdict for actionable fraud, Emerson was required to prove nine familiar elements; (1) a representation; (2) its falsity; (3) its materiality; (4) the author's knowledge of its falsity; (5) the author's intent that the representation be acted upon; (6) her ignorance of its falsity; (7) her reliance upon its truthfulness; (8) her right to rely thereon; and (9) her proximate and consequent injury. *M. B. Kahn Construction Co. v. S. C. National Bank;* 275 S. C. 381, 271 S. E. (2d) 414 (1980); *Moorhead v. First Piedmont Bank and Trust Company*, 273 S. C. 356, 256 S. E. (2d) 414 (1979).

As a general rule and of particular relevance here, the fraudulent representation must relate to a present or preexisting fact and it cannot ordinarily be based on unfulfilled promises or statements as to future events. *Woodward v. Todd,* 270 S. C. 82, 240 S. E. (2d) 641 (1978); *Davis v. Upton,* 250 S. C. 288, 157 S. E. (2d) 567 (1967). Emerson claims that this case falls within the general rule. We disagree.

For the purposes of this decision, we assume that S.P.M., Scott, Powell and Mason joined a preexisting partnership of which D.V.W. was a member and that, in order to find liability on the part of the appellants for any injury suffered by Emerson, it was not necessary that the appellants themselves perpetrate the alleged fraud. *See* S. C. Code of Laws § 33-41-390 (1976); Karesh, *The Uniform Partnership Act,* 3 S.C.L.Q. 437-39 (1951).

We turn therefore to the evidence to determine whether the record supports a finding that either the preexisting partnership or the appellants themselves committed actionable fraud and Emerson was injured as a result.

According to the evidence, Emerson, the wife of Vestal and a former employee of the Bankruptcy Court in North Carolina, advanced a total of $20,000 to D.V.W. between January and March, 1979. The $20,000 was to assist D.V.W. in the building of a planned apartment complex, Royal Arcadian Condominiums.

She initially forwarded $7,000 to Wilson of D.V.W. pursuant to a contract of sale dated January 1, 1979, for the purchase of Apartment No. 27. Shortly thereafter, she entered into two more contracts with D.V.W. to purchase additional apartments at Royal Arcadian Condominiums and she transmitted $13,000 to Wilson and D.V.W. pursuant to these contracts.

The apartments she contracted to purchase were never conveyed to her. In fact, none of them were ever built.

Later, however, Emerson received an unsigned and undated contract from Wilson of D.V.W. in which she was offered Apartment 10-C at Seacrest Villas or $28,801.44 in satisfaction of the debt owed her by D.V.W. Emerson refused to accept either option. Although nine apartments at Seacrest Villas were eventually constructed, Apartment 10-C was not one of them.

On January 31, 1980, Emerson co-signed two demand notes that totaled $200,000 at the urging of Scott and Mason. They induced her to sign the notes, Emerson testified, by representing to her that, in doing so, she would either later get her money back or a condominium of her choice at Seacrest Villas and would be made a partnership.

Emerson neither received a condominium nor her money back. She also was never made a partner. Regarding the notes Emerson co-signed, there is no evidence that she suffered any pecuniary loss because of them. The evidence in the case shows that the notes were either paid or others substituted for them by S.P.M.

The testimony at trial nowhere indicates that Emerson was defrauded by D.V.W. Emerson merely established that she was promised three condominiums at Royal Arcadian in return for the advancement of $20,000 and she did not get them.

The testimony likewise fails to show that Emerson was defrauded by the appellants. She simply proved that she was promised a partnership and either a Seacrest Villas condominium or her money back for co-signing two notes.

As in *Woodward v. Todd, supra,* Emerson proved "nothing more than appellant[s'] failure to keep [their] promises;" and "[w]hile this showing may entitle [Emerson] to relief in a contract action if it is determined the promises were actually made, such showing is not sufficient to demonstrate actionable fraud." 270 S. C. at 86, 240 S. E. (2d) 641.

Because the only reasonable inference to be drawn from all the evidence was that Emerson failed to establish a cause of action for fraud and deceit, the question became one of law for the court and the trial judge erred in refusing to grant appellants' motion for directed verdict.

We need not consider, therefore, the other grounds urged by the appellants for reversal.

Reversed.

SANDERS, C. J., and GARDNER, J., concur.