0512

Mae ELDERS, Respondent, v. Dewey Thomas PARKER, Appellant.
(332 S. E. (2d) 563)

Court of Appeals

*Thomas F. McDow,* Rock Hill, *for appellant.*

*Charles B. Burnette, III,* of *Ridley & Ridley,* Rock Hill, *for respondent.*

Heard March 21, 1985.

Decided June 26, 1985.

BELL, Judge:

Mae Elders sued Dewey Parker to recover some $11,000 she gave Parker, allegedly to start a trucking business. The case was submitted to the jury on causes of action in contract and fraud. They returned a general verdict in Elders' favor for $11,000 actual damages and $15,000 punitive damages. Parker appeals. We affirm.

On appeal from a jury verdict, the evidence and any inferences to be drawn therefrom must be viewed in the light most favorable to the respondent. Our review is limited to determining if there is any evidence which reasonably tends to support the verdict. *Madden v. Cox,* _____ S. C. _____ , 328 S. E. (2d) 108 (Ct. App. 1985); *McGaha*

*v. Mosley*, 283 S. C. 268, 322 S. E. (2d) 461 (Ct. App. 1984). Viewed in the light most favorable to Elders, the testimony established the following facts.

Elders and Parker are both middle aged persons of limited means and education. Elders has worked in the textile industry, but at the time of trial her sole income was social security. Parker works for a utility company. When they met in the spring of 1979, Elders had been widowed scarcely six months. Parker's wife had left him earlier in the season. This couple embarked on a brief romance which ended abruptly when Parker attempted reconciliation with his wife in December.

About two months after she started dating Parker, Elders moved from her home and set up housekeeping in Parker's trailer. She testified that Parker described a wonderful life for the two of them as partners in the trucking business. If only they could raise enough money to purchase a big rig, Parker told her, they would be rich in a year. Elders, her judgment apparently clouded by affection, agreed. Initially she and Parker approached her daughter and son-in-law about co-signing a loan for the truck. When they demurred, Parker suggested Elders mortgage her home to help purchase the truck. He offered to borrow against his own property to make up his share of the purchase price.

In midsummer Elders gave Parker $1,600 for repairs to his pickup truck and a new air conditioner for his mobile home. She testified that she understood the $1,600 would be credited to her part of the trucking business. In late September Elders executed a note and mortgage on her home. The total amount of the note was nearly $20,000; on October 1 Elders and Parker picked up a check for $11,122.75 from the mortgage lender.

At Parker's suggestion, they tried to negotiate the check at the Rock Hill National Bank. Rock Hill National was unable to cash it, and gave them a cashier's check to take to the C & S Bank down the street. When they returned to Parker's car, a 1975 Oldsmobile, Elders placed the entire $11,000 cash on the seat between them. Parker then drove with her to three different lending offices and paid off loans on his land, his Oldsmobile, and his pickup truck. Later that day he drove to Fort Mill and purchased a house trailer for

$2,300. That evening when he returned to the mobile home, he gave Elders $1,000 and pocketed what was left over. According to Elders' trial testimony, Parker spent or kept over $10,000 of the loan proceeds.

Elders continued her blissful, albeit now poorer, relationship with Parker for another two months. Shortly before Christmas, Parker asked her to move out of the mobile home, because he was trying to make up with his wife. Elders left. She had rented her house, and was too embarrassed to stay with her daughter, so she slept in her car for two weeks. In March 1980 she sold her home to avoid foreclosure on the mortgage she had given in October. In April 1980 she filed this lawsuit.

On appeal, Parker argues (i) venue was improperly laid in York County; (ii) there was insufficient evidence to support the jury's verdict; and (iii) there was no evidence to support the award of punitive damages.

## I.

Elders' first complaint, filed April 23, 1980, alleged Parker was a resident of York County. Parker timely answered, specifically denying that allegation. He subsequently moved for a change of venue to Oconee County on the ground that he resided there at the time suit was filed. The motion was heard in May 1981. No ruling was made at that time, but the trial judge indicated he would change venue if Parker filed an affidavit of residency. In August, Parker changed attorneys. An order relieving his former counsel also provided Parker twenty days to file an affidavit of residency. Elders filed her second amended complaint in October 1981, again alleging Parker's York County residency. Parker renewed his motion for change of venue. On November 5, 1981, Judge McFadden denied the motion. His order specifically found that Parker had failed to provide any affidavit as required by the two previous orders and that he had thereby waived his right to a change of venue.

A defendant's right, in a civil action, to have the case heard in his home county is a substantial one, but one which may be waived. *Landvest Associates v. Owens*, 274 S. C. 334, 263 S. E. (2d) 646 (1980). When the complaint alleges venue in the wrong county, it is incumbent upon the

defendant to show venue is improper. *Kelly v. Dangel*, 233 S. C. 301, 104 S. E. (2d) 383 (1958).

In this case, Parker was given at least two opportunities to prove his residency. He never provided an affidavit as requested by the trial court. His failure to act in the face of the trial judge's instructions was completely inconsistent with his assertion that the case should be tried in Oconee County and amounted to a waiver of his right to have the case heard there. *Cf. Bonnette v. State*, 277 S. C. 17, 282 S. E. (2d) 597 (1981) (right to a preliminary hearing may be waived, even after a timely request, by subsequent conduct inconsistent with the continued assertion of the right). We find no error in refusing to grant the motion for change of venue.

## II.

### A.

Parker next challenges Elders' right to rely on his alleged representation that he would establish the two of them in the trucking business.[1] He argues that Elders, having once lent him $1,600 which he had not repaid, should have been suspicious of his intentions. Since she had reason to doubt the truthfulness of his promises, Parker reasons, she had no right to rely on them as a matter of law.

Parker correctly points out that every person must exercise reasonable diligence for his own protection, and no action for fraud will lie when a simple inquiry would have exposed the misrepresentation. *Shockley v. Wickliffe*, 150 S. C. 476, 148 S. E. 476 (1929). However, it is also true that a wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and unwary. *Parks v. Morris Homes Corp.*, 245 S. C. 461, 141 S. E. (2d) 129 (1965); *Thomas v. American Workmen*, 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1 (1941). Whether reliance is justified in a given situation requires an evaluation of the circumstances involved, including the positions and relations of the parties. *Id.; see Giles v. Lanford &*

---

[1] At oral argument Parker contended this case is controlled by our holding in *Emerson v. Powell*, 283 S. C. 293, 321 S. E. (2d) 629 (Ct. App. 1985). As this point was raised neither at trial, in Parker's exceptions, nor in his brief, it is not properly before us.

*Gibson,* _____ S. C. _____ , 328 S. E. (2d) 916 (Ct. App. 1985).

It is uncontested the jury were properly charged on the law of fraud. Therefore, our inquiry is limited to determining if the jury had any evidence before them tending to prove Elders' right to rely.

Elders' testimony reasonably supports the view that she is a credulous, trusting person. She repeated that she believed in Parker; that she thought he would do the right thing by her; and that she was in love with him. It is inferable from the record that she lacks book learning as well as schooling in the ways of the world. The jury were permitted to consider Elders' lack of education and business experience, as compared to Parker, in determining if her reliance was justified. We discern sufficient evidence in this record to support a finding that Elders had a right to rely on Parker's misrepresentation.

## B.

Parker also argues no contract was proved. Since the jury returned a general verdict and there is evidence supporting the verdict on Elders' cause of action in fraud, we need not consider the sufficiency of evidence of a contract. *Anderson v. West,* 270 S. C. 184, 241 S. E. (2d) 551 (1978); *Gasque v. Heublein, Inc.,* 281 S. C. 278, 315 S. E. (2d) 556 (Ct. App. 1984).

## III.

Parker finally contends there is no basis for the jury's award of exemplary damages. His argument is two-fold. First, he maintains that since no fraud was proved, no punitive damages may be awarded. As we have found support for the jury's verdict on the basis of fraud, this argument has no merit. Second, Parker attacks the award of $15,000 as excessive because of his straitened financial condition. Parker's ability to pay is a relevant factor in assessing punitive damages, but the jury may also consider the nature of his wrongdoing. *Bowen v. Johnson,* 252 S. C. 423, 166 S. E. (2d) 766 (1969). Unless the verdict is so excessive as to manifest passion, prejudice, caprice, or corruption, this Court is powerless to review its amount. *Id.* The record here does not indicate the jury were motivated by any improper considerations. Elders lost not only her money, but

also her home. For a person of her modest means, these were far from trivial losses. The jury could take them into account in determining the amount of punitive damages.

For the foregoing reasons, the judgment of the circuit court is

Affirmed.

SANDERS, C. J., and SHAW, J., concur.