**John BOSTICK, Appellee,**

v.

**ORKIN EXTERMINATING COMPANY, INC., Appellant.**

**No. 85–1985.**

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1986.

Decided Dec. 4, 1986.

Ray P. McClain, Charleston, S.C., for appellant.

Francis X. McCann, Charleston, S.C., for appellee.

Before WIDENER and WILKINSON, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

WIDENER, Circuit Judge:

Orkin Exterminating Company (Orkin) appeals a judgment of $145,000 entered in favor of John Bostick. Bostick originally brought suit against Orkin in a state court in South Carolina. Pursuant to 28 U.S.C. § 1441, Orkin removed the case to the United States District Court for the District of South Carolina. Bostick's action for fraud and breach of warranty was based upon a Wood Infestation Report prepared by Orkin. We reverse.

On May 27, 1983, Bostick purchased a house from George Kerner[1] in Charleston, South Carolina. Orkin prepared the South Carolina Wood Infestation Report which was given to the parties at the closing on the house. The Report consisted of a state prepared and required standard form on which Orkin checked answers to printed questions.[2] Orkin answered "yes" to the inquiry as to whether "there were visible damaged structural members (columns, sills, joists, plates, headers, exterior stairs, porch supports)." Orkin specified that the damage was caused by powder post beetle infestation. Orkin also commented that there was "no structural damage." Orkin answered that there was, in its opinion, insufficient visible damage to recommend repair, and commented that there was "no visible structural damage." Lastly, Orkin stated that it had previously treated the property for termites, powder post beetles and wood decay fungus.

Orkin issued the Report on May 27, 1983, the day before the closing. Orkin had previously treated the property and was called upon by Kerner to prepare the Wood Infestation Report. Upon inspection on the 26th, Orkin found active infestation of powder post beetles. Based on that finding, Orkin prepared a treatment contract for Kerner. The contract itself is not in evidence, but a diagram showing the infested area, attached to the contract, was introduced separately. On that diagram, Orkin

---

1. Kerner is not a party to this lawsuit.

2. This form, CL–100, was approved by the South Carolina division of Regulatory and Public Service Programs. Its use was required by S.C. Code Ann.Reg. 27–1085(K).

noted that there was active infestation of powder post beetles and damage present. The infested areas included the sills, joists and subfloor throughout. On that diagram, Orkin noted that it treated the substructure for powder post beetles.

After treating the property on May 26th for the powder post beetles pursuant to the treatment contract, on May 27th Orkin issued the Wood Infestation Report at issue here. In addition to the information previously mentioned, the Wood Infestation Report stated in bold print: "See other side of this report for additional conditions governing this report." The back side of the form stated the following in easily read bold type:

### CONDITIONS GOVERNING THIS REPORT

This report is based on observations and opinions of our inspector. It must be noted that all buildings have some structural wood members which are not visible or accessible for inspection. It is not always possible to determine the presence of infestation without extensive probing and in some cases actual dismantling of parts of the structure being inspected.

All inspections and reports will be made on the basis of what is visible, and we will not render opinions covering areas that are enclosed or not readily accessible, areas of finished rooms, areas concealed by wall coverings, floor coverings, furniture, equipment, stored articles or any portion of the structure in which inspection would necessitate tearing out or marring finished work. We do not move furniture, appliances, equipment, etc. Plumbing leaks may not be apparent at the time of inspection. If evidence of such leaks is disclosed, liability for the correction of such leaks is specifically denied.

.   .   .   .   .

*If there is evidence of active infestation or past infestation of termites and/or wood-destroying insects or fungi, it must be assumed that there is* *some damage to the building caused by this infestation.* (Italics added)

The company, upon specific request and agreement as to additional charge, will open any inaccessible, concealed, or enclosed area and inspect same and make a report thereon.

*Any visible damage to a wood member in accessible areas has been reported. The above-named firm's inspectors are not engineers or builders, and you may wish to call a qualified engineer or expert in the building trade to ascertain their opinion as to whether there is structural damage to this property.* (Italics added)

After completing the Wood Infestation Report, on May 27th Orkin gave it to Liz Mitchum, an employee of Kerner's real estate agent. Orkin did not attach the treatment diagram to the Wood Infestation Report that was to be given to the parties at closing. Orkin did attach the diagram to the treatment contract given to Kerner.

As previously noted, Bostick was given a copy of the Wood Infestation Report at closing. He read the Report but did not inquire about the infestation damage discussed in the Report. He did not seek to have the closing postponed until he could conduct his own inspection of the damage. He did not seek any additional information from Orkin. The closing on the house was completed the same day and Bostick soon began occupying the property.

In February 1984 (some nine months after the closing), Robert Hatcher, an Orkin employee, inspected the property pursuant to the terms of the treatment contract with Kerner. Hatcher found damage to one area of the house, probably caused by powder post beetles and water damage. He found no active infestation of powder post beetles at that time but one floor joist was not supporting anything. Hatcher removed a piece of wood from the joist and showed it to Bostick, stating that that one area of the house was "literally hanging by a thread." Hatcher advised Bostick to continue his pest control coverage with Orkin

because the soundness of the entire house depended upon preventing any further insect or water damage. At trial, Hatcher testified that he agreed with the information reported on the Wood Infestation Report. He thought that the damage to the one area of the house was the result of water.

After speaking to Hatcher, Bostick began investigating the condition of his house. Shortly thereafter, he brought this lawsuit against Orkin for fraud and breach of warranty. Following a trial on the merits, a jury returned a verdict in Bostick's favor. The jury awarded Bostick $54,000 in compensatory damages and $100,000 in punitive damages. The district court concluded that the jury's award of actual damages was too liberal and reduced that award to $45,000. The court refused to disturb the jury's award of $100,000 for punitive damages.

Because this is a diversity case, we look to South Carolina law to determine whether such a claim for breach of warranty may exist against Orkin. Bostick's claim is that in the Wood Infestation Report, Orkin expressly warranted that there was no structural damage to his house when in fact there was substantial damage.

■ A review of the regulation governing Wood Infestation Reports, S.C.Code Ann.Reg. 27–1085, convinces us that such a breach of warranty claim cannot lie against Orkin for statements it made in the Report. The regulation provides that such a report [3] shall be issued following an inspection of the readily accessible areas of the structure. The inspector must sound or probe those areas of the structure showing visible signs of damage. S.C.Code Ann.Reg. 27–1085(K). Further, the regulation provides in part that:

> "This Wood Infestation Report cannot be viewed as a structural damage report."

Just as importantly, the regulation continues:

> If visual evidence of wood-destroying organisms or damage is noted in this report, further investigation for structural damage by qualified building experts is recommended. *This report is not a warranty as to the absence of wood-destroying organisms at the time of the inspection;* rather, it is a report of the apparent absence of wood-destroying organisms at the time of the inspection. Any warranty or guarantee must be obtained from a pest control operator who has treated the premises. (Italics added)

S.C.Code Ann.Reg. 27–1085(K).

It is clear that no such warranty can be found in Bostick's favor from the Wood Infestation Report itself from any statements Orkin made in that Report. Leaving all else aside, the regulation, 27–1085(K), explicitly states that the Report "cannot be viewed as a structural damage report" and that it is "not a warranty as to the absence of wood destroying organisms." Thus, Orkin's statement in the Report that there was no structural damage may not be considered a warranty under the laws of South Carolina.

Bostick did not have a treatment contract with Orkin. While he may be a third party beneficiary to a treatment contract Orkin had with former owner Kerner, or may have succeeded to Kerner's interest in such a contract, Bostick did not sue on any such contract, nor did he introduce such treatment contract into evidence. Likewise, no one testified as to the terms of such a contract. With no evidence in the record about a Kerner contract, we cannot speculate as to whether Bostick would have a claim for repairs under it. It follows, and we hold, that the district court erred in submitting Bostick's breach of warranty claim to the jury.

**3.** That report must be given to each party to the realty transaction. S.C.Code Ann.Reg. 27–1085(K)(1). Bostick does not claim that he was not given this report. (He signed the bottom of the report.) Instead, he claims that the information on the report was inconsistent with the information on the diagram prepared by Orkin and that he should have also been given that diagram by Orkin.

Bostick's second claim for relief below was based on fraud. Under South Carolina law, Bostick must prove nine elements of fraud: (1) Orkin's representation; (2) its falsity; (3) its materiality; (4) Orkin's knowledge of its falsity or reckless disregard of its truth or falsity; (5) Orkin's intent that the representation be acted upon; (6) Bostick's ignorance of its falsity; (7) Bostick's reliance upon the representation; (8) his right to rely thereon; and (9) his proximate and consequent injury. *M.B. Kahn Construction Co., Inc. v. South Carolina National Bank,* 275 S.C. 381, 271 S.E.2d 414 (1980); *Emerson v. Powell,* 283 S.C. 293, 321 S.E.2d 629 (App.1984). Failure to prove any of these elements is fatal. *O'Shields v. Southern Mobile Homes, Inc.,* 262 S.C. 276, 204 S.E.2d 50 (1974); *King v. Oxford,* 282 S.C. 307, 318 S.E.2d 125 (App.1984). Fraud is not to be presumed. It must be proven by clear, cogent, and convincing evidence. *Jones v. Cooper,* 234 S.C. 477, 109 S.E.2d 5 (1959).

Orkin's statement in the Wood Infestation Report that it found no structural damage or visible structural damage serves as the basis for Bostick's claim for fraud. Bostick claims that such a representation was false in light of the evidence adduced at trial that there was structural damage to the house.[4] Bostick claims that Orkin knew its statement was false because the diagram it prepared contradicts the information provided in the Wood Infestation Report. The argument goes that by not attaching the inconsistent diagram to the Wood Infestation Report, Orkin was attempting to cover up the true amount of damage to the structure caused by the powder post beetle infestation. Bostick claims he had the right to rely, and in fact did rely, upon the Wood Infestation Report because it was prepared for his benefit by Orkin, an expert in the field. Had Bostick known the extent of damage to the house, he says he would not have purchased it.

In order to conclude that the district court erred in submitting the fraud claim to the jury, we must find that the evidence was insufficient to permit a rational jury to find in Bostick's favor. *Miller v. Premier Corp.,* 608 F.2d 973 (4th Cir.1979); *Tights, Inc. v. Acme-McCrary Corp.,* 541 F.2d 1047 (4th Cir.1976). All conflicts in the evidence must be resolved in Bostick's favor. The evidence must be considered in the light most favorable to Bostick. *McClure v. Price,* 300 F.2d 538 (4th Cir. 1962). As noted, we look to the substantive law of South Carolina to determine the elements that must be proved to support a finding of fraud by Orkin.

■ After a review of the record, we conclude that there is insufficient evidence upon which the jury could have found that Bostick had a right to rely upon any representation of Orkin with respect to structural damage in the Wood Infestation Report.

Plaintiff's case was this: "... our whole theory of the case is that there was heavy-duty damage. That they were aware of it. They had it in writing in their Report [the diagram] and said just the opposite."

To begin with, S.C.Code Ann.Reg. 27–1085, which requires the use of the reporting form specifically states: "This Wood Infestation Report cannot be viewed as a structural damage report."

The regulations further continue that: "If visual evidence of wood destroying organisms or damage is noted in this report, further investigation for structural damage by qualified building experts is recommended."

Even if the facts supported the plaintiff's theory of his case, a question we need not decide, we do not believe that the explicit wording of the state regulations which underlie the foundation of the plaintiff's case may be disregarded. The regulation says in effect that the Report may not be considered a report of structural damage, yet the plaintiff's case is built around the very

---

**4.** Bostick introduced evidence at trial which tended to show that there was extensive damage to the substructure of the house. Two of Bostick's witnesses believed that the substructure had to be replaced rather than repaired.

fact that plaintiff relied on the Report as a report of structural damage, quite the opposite from the requirement of the regulation.

Despite the explicit recommendation in the regulation recommending "investigation for structural damage" by "qualified building experts," if there was "visual evidence of wood destroying organisms or damage," that recommendation also was not followed by Bostick. Whatever the purport of the entire Report, it is perfectly clear that at the very least it reported previous infestation by powder post beetles visually perceived.

The tenor and effect of the regulations are carried out in the form of the Wood Infestation Report which is at the heart of this case.

Under the "CONDITIONS GOVERNING THIS REPORT," in bold but lower case type on the reverse side of the Report is the admonition that "if there is evidence of active infestation or past infestation of termites and/or other wood destroying insects or fungi, it must be assumed that there is some damage to the building caused by this infestation."

The conditions further continue that "the above named firm's inspectors are not engineers or builders, and you may wish to call a qualified engineer or expert in the building trade to ascertain their opinion as to whether there is structural damage to this property."

Despite these various warnings which are in plain and intelligible language, Bostick did not question anyone about the contents of the Report; he did not have a qualified building expert or engineer look at the building as he had been advised by the Report and by the regulations so to do; and he did not even look under the house himself.

The only thing that Bostick points us to is that he relied on those parts of the answers on the form which may be favorable to him. He declines, however, to ac-knowledge those parts which are unfavorable as well as the governing regulation.

█ Under these circumstances, we think that Bostick's reliance on the answers on the face of the form was unjustified. Since he seeks to rely on the contents of the form as the source of his cause of action for fraud, a reliance on those contents without complying with the simple recommendations and requirements of the state regulations and the form itself is unjustified. One claiming fraud in South Carolina must "exercise reasonable diligence and prudence under the circumstances." *Florentine Corp. v. PEDA 1, Inc.,* 287 S.C. 382, 339 S.E.2d 112 (1985). We think Bostick's failure to comply with the simple warnings and recommendations indicated in the Report and regulation was not reasonable diligence and prudence under the circumstances. A failure to show a right to rely on an alleged misrepresentation, as here, is enough to defeat the claim. *King v. Oxford,* supra, 318 S.E.2d at 127. The judgment for fraud must be reversed.

We hasten to add that this case was not tried on any theory of negligence. Neither was there any claim nor proof of any active infestation of powder post beetles on or after the day of the sale to Bostick, so Orkin's treatment the day of the sale or the day before was successful so far as this record shows. This case also was not based on any contract between Kerner and Orkin, either for the treatment which took place just before the sale or at any previous time. Although we may surmise that there were contracts previous to the one entered into between Kerner and Orkin, for treatment, just before the sale, neither that nor any other contract between Kerner and Orkin was introduced into evidence or relied upon. We express no opinion upon any of these questions.

The judgment of the district court is accordingly

REVERSED [5].

---

**5.** The motion of Orkin to supplement the record shall be, and it hereby is, denied.