22666

The STATE, Respondent v. Ernest M. RIDDLE, Appellant.

(353 S. E. (2d) 138)

Supreme Court

*David I. Bruck,* and *S. C. Office of Appellate Defense,* Columbia, and *Kenneth M. Holland,* and *Arthur L. Shemwell,* Gaffney, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *William Edgar Salter, III,* Columbia, and *Solicitor Holman C. Gossett, Jr.,* Spartanburg, *for respondent.*

Heard Dec. 8, 1986.

Decided Feb. 2, 1987.

*Per Curiam:*

Appellant Ernest M. Riddle (Riddle) was convicted of murder, burglary and armed robbery. He was sentenced to death for murder, to life imprisonment for burglary and to 25 years for armed robbery.

This case consolidates Riddle's appeal and our mandatory review of the death sentence pursuant to S. C. Code Ann. § 16-3-25 (1985). We affirm the convictions, reverse the sentence of death and remand for resentencing.

## FACTS

Riddle and his 17-year-old brother, Jason Riddle (Jason),[1] broke into the Gaffney home of Abbie Sue Mullinax during the early morning hours of August 8, 1985. Riddle remained in the kitchen while Jason entered Mrs. Mullinax's bedroom and took money from her purse. Jason stumbled on the way back to the kitchen, awakening Mrs. Mullinax and her stepdaughter, Marie Osment. Mrs. Mullinax went to investigate and screamed when she saw the intruders. Riddle cut Mrs. Mullinax's throat with a knife he found in the kitchen. He and Jason then escaped through a window. Mrs. Mullinax died shortly thereafter of exsanguination.

Riddle and Jason later went to the home of Jimmy and Tammy Lewis, at which their older brother Bruce Riddle (Bruce) was living. Bruce noticed that Riddle was wet and bloody from the knees down, and appeared "edgy." The next morning, while watching an account of the killing on televi-

---

[1] Jason also was charged with murder, burglary and armed robbery. He pleaded guilty and received two terms of life imprisonment and 25 years.

sion, Riddle remarked "we don't have to worry about that bitch no more." Bruce later informed the police his brothers were involved in the killing.

## ISSUES

1. Did the trial judge err in limiting the cross-examination of Bruce as to whether he had previously stated he was paid for his testimony?

2. Did the trial judge err in the sentencing phase by excluding opinion evidence of a psychologist as to Riddle's future adaptability in prison life?

3. Did the trial judge err by admitting Riddle's juvenile record as evidence in aggravation of punishment when the State had not given Riddle notice of its intent to introduce the evidence?

## I. CROSS-EXAMINATION

Bruce was called as a witness for the State at trial. During cross-examination he denied ever telling anyone he was paid to give a statement in this case. Defense counsel placed Bruce on notice he planned to impeach this denial with testimony of Mary Riddle, the stepmother of all three Riddle brothers.

In an attempt to impeach his credibility further, Bruce was asked by one of Riddle's counsel, Kenneth Holland, whether he remembered having a conversation with Arthur Shemwell, Riddle's co-counsel. Bruce replied that he remembered talking with Mr. Shemwell about a week before, while he was in the Union County jail. Bruce was then asked if "[a]t that time was the proposition that you'd been paid to testify brought up?" Bruce replied affirmatively and the State immediately objected to the line of questioning.

Out of the presence of the jury, the trial judge expressed his concern that Mr. Shemwell would have to withdraw from the case if he intended to testify as an impeachment witness. See DR 5-102(A), Code of Professional Responsibility, Supreme Court Rule 32. Mr. Holland acquiesced in the ruling, stating that he had intended to go no further than the affirmative answer to the question quoted above. Mr. Shemwell did not attempt to withdraw from his representation of Riddle, nor was any proffer of his impeachment testimony made.

Mrs. Riddle was later called as an impeachment witness. She testified that on September 10, 1985, Bruce told her that his brothers did not kill Mrs. Mullinax, but that he had "turned them in" for the reward money. She also testified that Bruce showed her the money he had received.

Riddle contends the limitation of cross-examination as to the conversation with Mr. Shemwell violated his right of confrontation. The State counters there was no error because the question by which Riddle's counsel desired to impeach Bruce had been asked and answered affirmatively. Counsel clearly stated he did not wish to pursue the ▮▮ matter of the Union County jail conversation further. Mr. Shemwell did not offer to withdraw. Under the doctrine of *in favorem vitae* we have a duty to search the record for prejudicial error committed *by the trial court. See State v. Shaw,* 273 S. C. 194, 255 S. E. (2d) 799, *cert. denied,* 444 U. S. 957, 100 S. Ct. 437, 62 L. Ed. (2d) 329 (1979); *State v. Lucas,* 285 S. C. 37, 328 S. E. (2d) 63, *cert. denied,* 472 U. S. 1012, 105 S. Ct. 2714, 86 L. Ed. (2d) 729 (1985). We are not required, however, to review the strategic decisions of defense counsel. We find no error.

## II. FUTURE ADAPTABILITY

At the sentencing phase of trial, Riddle proffered the ▮ expert opinion testimony of a clinical psychologist who had conducted an evaluation of him relative to his potential to adapt to prison life. The proffer was made in the form of a written report which recited Riddle's personality characteristics as constructed from a battery of psychological tests. The report concludes with the opinion that Riddle is "very likely to adapt reasonably to prison life."

The trial judge ruled that, under South Carolina precedent, the testimony was irrelevant and inadmissible.

In *State v. Patterson,* 290 S. C. 523, 351 S. E. (2d) 853 (1986), and *State v. Matthews,* _____ S. C. _____, 353 S. E. (2d) 444 (1986), this identical issue was presented. In both cases, we held that exclusion of expert opinion evidence relative to a defendant's future adaptability to life in prison was reversible error under *Skipper v. South Carolina,* 476 U. S. _____, 106 S. Ct. 1669. 90 L. Ed. (2d) 1 (1986). *See also Lockett v. Ohio,* 438 U. S. 586, 98 S. Ct. 2954, 57 L. Ed. (2d) 973 (1978);

*Eddings v. Oklahoma,* 455 U. S. 104, 102 S. Ct. 869, 71 L. Ed. (2d) 1 (1982).

Here, again, we hold the exclusion of the testimony was reversible error under *Skipper.*

### III. JUVENILE RECORD

At the sentencing phase, the State sought to introduce Riddle's juvenile record. Riddle objected on the ground the State had failed to provide notice of its intention to offer this evidence. Citing *State v. Plath,* 277 S. C. 126, 284 S. E. (2d) 221 (1981), the trial judge overruled the objection. The records of Riddle's three juvenile adjudications of delinquency were published to the jury and submitted as an exhibit.

Riddle contends the State's failure to give notice violates Criminal Practice Rule 8 and S. C. Code Ann. § 16-3-20 (1985). We agree.

> Rule 8(a)(1)(B) provides:
> Upon request of the defendant, the prosecution shall furnish to the defendant such copy of his criminal record, if any, as is within possession, custody or control of the prosecution, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the prosecution.

Section 16-3-20(B) provides that in the sentencing phase of a capital case "[o]nly such evidence in aggravation as the State has made known to the defendant in writing prior to the trial shall be admissible."

Riddle filed a Rule 8 discovery request shortly after his arrest.

We agree the State's omission violated Rule 8 and § 16-3-20(B). The trial court's reliance on *State v. Plath, supra,* was misplaced. In that case, the juvenile record of a State's *witness* was not turned over. This type of document does not fall under Rule 8(a)(1)(B), which addresses only the *defendant's* record. By the clearest of terms, Rule 8 requires that the State, upon request, furnish the defendant a copy of his criminal record.

The State contends § 16-3-20(B) is inapplicable because the juvenile record was not a *statutory* aggravating circum-

stance. This distinction is without merit. The purpose of § 16-3-20(B) is to ensure the defendant in a capital case is given a fair and complete opportunity to respond to each factual allegation used by the State as a justification for a sentence of death. Due process requires that a defendant not be sentenced to death on the basis of information which he had no opportunity to deny or explain. *See Gardner v. Florida*, 430 U. S. 349, 97 S. Ct. 1197, 51 L. Ed. (2d) 393 (1977).

We hold the admission of Riddle's juvenile record as evidence in aggravation was error. The State failed to give written notice prior to trial as required by § 16-3-20(B).

Affirmed in part; reversed in part; and remanded.

HARWELL, J., not participating.