23102

The STATE, Respondent v. Keith Allen CHILDS, Jr., Appellant.

(385 S. E. (2d) 839)

Supreme Court

*Assistant Appellate Defender Daniel T. Stacey*, of *S. C. Office of Appellate Defense*, Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.*, and *William Edgar Salter, III*, Columbia, and *Sol. Joseph J. Watson*, Greenville, *for respondent.*

Heard Sept. 20, 1989.

Decided Nov. 13, 1989.

HARWELL, Justice:

Appellant was convicted of conspiracy, armed robbery, and the murder of Nathan Wix (Wix), a Hess station employee. He was sentenced to life imprisonment without parole for thirty years for murder. Consecutive sentences of

twenty-five years for armed robbery and five years for conspiracy were imposed. This appeal follows. The issues on appeal include whether:

1. the trial judge erred in denying appellant's request for background information compiled by the prosecution regarding prospective jurors in his case;
2. the trial judge erred in allowing appellant's post-conviction statement into evidence because it was made under a threat by the State to seek the death penalty by the electric chair;
3. the trial judge erred in allowing a witness to testify about his work with bloodhounds during the investigation because the appropriate foundation was not established for the admission of such testimony;
4. the trial judge erred in denying appellant's motion for a directed verdict of acquittal for the crime of conspiracy, because there was no evidence of conspiracy apart from his post-arrest statement;
5. the trial judge erred in denying appellant's motion for a directed verdict of acquittal for the crime of armed robbery and in sustaining the aggravating circumstance of robbery while armed with a deadly weapon because the prosecution failed to establish that money was taken from the person or presence of the victim;

## DISCUSSION

### I. BACKGROUND INFORMATION ON JURORS

The appellant contends that the trial judge erred in denying his request for background information compiled by the prosecution regarding prospective jurors in his case. Appellant filed two motions requesting all records of arrest, convictions, and prior jury service including information as to backgrounds, attitudes, or characteristics of any member of the petit jury venire.

In a recent capital murder case, the defendant made a similar request. *State v. Matthews*, 296 S. C. 379, 373 S. E. (2d) 587 (1988) *cert. denied*, _____ U. S. _____ , 109 S. Ct. 1559, 103 L. Ed. (2d) 861 (1989). The defendant in *Matthews* moved for disclosure of criminal records, prior jury service records, and the results of "any other investigation ... concerning

backgrounds, attitudes or characteristics" of potential jurors. The trial judge granted the defendant's motion, but only as to criminal records checks the prosecution had gathered on prospective jurors. The defendant in *Matthews* appealed, claiming that the trial judge erred in refusing to require the solicitor's office to disclose the other information requested. On appeal, we held that there was no violation of due process and that the trial judge did not abuse his discretion in refusing to require the solicitor's office to disclose the remainder of the information it had gathered on prospective jurors.

Under *Matthews*, appellant is not entitled to information collected by the prosecution as to the prior jury service, backgrounds, attitudes, or characteristics of any member of the petit jury venire. In *Matthews*, however, we did not address the issue of whether a defendant is entitled to criminal records checks or records of arrest.

No right to discovery exists in a criminal case absent statute or court rule. *State v. Matthews, supra; State v. Miller*, 289 S. C. 316, 345 S. E. (2d) 489 (1986). Because there is no statute or court rule requiring a disclosure of this information, we hold that the trial judge did not abuse his discretion in denying appellant's request.

## II. ADMISSIBILITY OF POST-ARREST STATEMENT

Appellant asserts that the trial judge erred in allowing his post-arrest statement into evidence because it was not freely and voluntarily made, but was made under a threat by the State to seek the death penalty by the electric chair.

Appellant specifically contends that the statement he made was the result of coercive police tactics. Appellant testified at his suppression hearing that the investigating officers who questioned him, threatened him with the electric chair. He argues that because his statement was made under this threat, it was not freely and voluntarily made and was therefore inadmissible. Appellant relies on *State v. Peake*, 291 S. C. 138, 352 S. E. (2d) 487 (1987). In *Peake*, we reversed the defendant's conviction of murder and sentence of life imprisonment and remanded for a new trial because the State failed to meet its burden of showing that the

.defendant's statement was voluntary and not the product of the investigating officer's promise of leniency.

The State distinguishes *Peake* because in *Peake*, the defendant's statement was induced by a promise *not* to seek the death penalty. The State asserts that appellant's statement in the present case was not induced by promises of immunity or leniency and that the waiver of rights form signed by appellant clearly indicated that no promises or threats were made and that no coercive tactics were used against him.

The State also contends that appellant's statement was freely and voluntarily made and argues that such voluntariness is indicated by the following evidence: prior to interrogation, appellant was advised of his *Miranda*[1] rights from a printed waiver form; appellant was read each line of such form and indicated that he understood his rights; appellant appeared to be sober and understand what was occurring when he signed a written waiver of his *Miranda* rights; appellant's statement of his participation in the crime was read to him; appellant was given the opportunity to read the statement; and appellant stated that he had no questions about the statement.

The test of admissibility of a statement is voluntariness. *State v. Franklin*, 382 S. E. (2d) 911 (S. C. 1989). If a defendant was advised of his *Miranda* rights, but chose to make a statement anyway, the "burden is on the State to prove *by a preponderance of the evidence* that his rights were voluntarily waived." *State v. Washington*, 296 S. C. 54, 55, 370 S. E. (2d) 611, 612 (1988) (emphasis in original). The State bears this burden of proof even where a defendant has signed a waiver of rights form. *State v. Goolsby*, 275 S. C. 110, 268 S. E. (2d) 31 (1980), *cert. denied*, 449 U. S. 1037, 101 S. Ct. 616, 66 L. Ed. (2d) 500 (1980). The trial judge's determination of the voluntariness of a statement must be made on the basis of the totality of the circumstances, including the background, experience, and conduct of the accused. *State v. Linnen*, 278 S. C. 175, 293 S. E. (2d) 851 (1982).

---

[1] *Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966).

Where there is conflicting evidence about a confession, the court must first make a finding as to the validity of the statement. *State v. Atchison,* 268 S. C. 588, 235 S. E. (2d) 294 (1977), *cert. denied,* 434 U. S. 894, 98 S. CT. 273, 54 L. Ed. (2d) 181 (1977). If the statement is found to be valid by the court, it should be submitted to the jury. *Id.* On appeal, the proper standard of review is that the conclusion of the trial judge as to the voluntariness of a confession will not be reviewed unless so erroneous as to show an abuse of discretion. *State v. Livingston,* 223 S. C. 1, 73 S. E. (2d) 850 (1952), *cert. denied,* 345 U. S. 959, 73 S. Ct. 944, 97 L. Ed. 1379 (1953).

After an *in camera* hearing held pursuant to *Jackson v. Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. (2d) 908 (1964), the trial judge found that appellant's post-arrest statement on February 9, 1987 was voluntarily made and not the result of coercive police tactics. The trial judge also found that appellant had been advised of his *Miranda* rights and that he voluntarily and knowingly waived such rights.

We conclude that based on the totality of the circumstances and on the record before us, the trial judge properly determined that appellant's post-arrest statement was voluntarily made and was not the result of coercive and threatening police tactics. We affirm the trial judge's initial determination of the validity of appellant's post-arrest statement and its ultimate submission to the jury.

### III. ADMISSIBILITY OF BLOODHOUND TESTIMONY

Appellant asserts that the trial court erred in permitting Doyle Whitlock of the Greenville County Sheriff Department's Support Division, a bloodhound handler, to testify about his work with the bloodhounds during the investigation because an appropriate foundation was not established for the admission of this testimony. We disagree.

The qualification of a witness as an expert is largely within the sound discretion of the trial judge. *State v. Hill,* 287 S. C. 398, 339 S. E. (2d) 121 (1986). The testimony of Whitlock provided a sufficient foundation for the admissibility of such evidence. Whitlock testified that he had "run" bloodhounds for Greenville County for eleven to

twelve years. Whitlock stated that the dogs had the characteristics of acuteness in scent as well as the power of discrimination between human and other scents. Whitlock testified that he found the bloodhounds to be reliable and also stated that he had been qualified as an expert witness between ten to fifteen times in prior court proceedings. The trial judge did not abuse his discretion in qualifying Whitlock as an expert witness.

## IV. AND V. DENIAL OF DIRECTED VERDICTS

Appellant argues that the trial court erred in refusing to direct verdicts in his favor because the evidence failed to establish that appellant was guilty of the crimes of conspiracy and armed robbery. We disagree.

It is the trial court's duty to submit the case to the jury where the evidence is circumstantial, if there is any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Edwards*, 298 S. C. 272, 379 S. E. (2d) 888 (1989). In ruling on a motion for a directed verdict, the trial judge is concerned with the existence of evidence, not with its weight. *Id.* In reviewing a denial of a motion for a directed verdict, we must view the evidence in the light most favorable to the State and if there is any direct or any substantial circumstantial evidence, reasonably tending to prove the guilt of the accused, we must find that such issues were properly to be decided by the jury. *State v. Stokes*, _____ S. C. _____, 386 S. E. (2d) 241 (1989); *State v. Edwards, supra; State v. Irvin*, 270 S. C. 539, 243 S. E. (2d) 195 (1978). Applying this standard, we find that the record in this case contains sufficient evidence to raise more than a mere suspicion of guilt and to warrant denial of both motions for directed verdicts as evidenced by the following discussion.

## A. CONSPIRACY

Appellant argues that the trial judge erred in denying his motion for a directed verdict of acquittal for the crime of conspiracy because there was no evidence of a conspiracy apart from appellant's statement.

Conspiracy is defined as "a combination between two or more persons for the purpose of accomplishing a criminal or unlawful object or an object neither criminal nor unlawful by criminal or unlawful means." S. C. Code Ann. § 16-17-410 (1976). The fact of conspiracy may be proven by any relevant competence evidence, having a legitimate tendency to support the accusation. *State v. Puckett*, 237 S. C. 369, 117 S. E. (2d) 369 (1960). The conspiracy may be shown not only by direct evidence, but by circumstantial evidence, or both. *Id.*

Initially, appellant told police that he did not know Tim Woodruff (Woodruff), the co-defendant. When appellant was shown Woodruff at the police station on the night of the arrest, the men appeared to know one another. Appellant and several of appellant's own witnesses stated that appellant did not know Woodruff. Appellant's employer stated that he had met Woodruff through appellant's introduction. Appellant's girlfriend testified that Woodruff was her nephew and that Woodruff lived with her parents.

Betty Scott (Scott) testified at trial that on the night of the murder, she had been driving down Stone Avenue. Scott stated that she had seen a man running from behind a white fence located on the lot of the Hess station, the area where Wix' body was discovered, onto the road in front of her car. Scott identified appellant at trial as the person she had seen the night of the murder. Another witness, Doyle Whitlock, a member of the Greenville County Sheriff Department's Support Division, testified that his bloodhounds tracked a scent from the victim's body to a white fence behind the Hess station, down Stone Avenue and to the home of Woodruff, appellant's co-defendant. Also, on February 9, 1987, the date of appellant's arrest, appellant gave a written statement stating that he had agreed to be the lookout for Woodruff while Woodruff "hit" the Hess station. We find that this evidence tends to prove the guilt of appellant as to the charge of conspiracy and hold that such guilt could be fairly and logically deduced from the evidence.

### B. ARMED ROBBERY

Appellant argues that the trial judge erred in denying his motion for a directed verdict for the crime of armed robbery and in sustaining the aggravating cir-

cumstance of robbery while armed with a deadly weapon on the grounds that the State failed to establish that money was taken from the person or presence of the victim. We hold that there was sufficient evidence to deny appellant's motion and to sustain the aggravating circumstance of robbery while armed with a deadly weapon.

Jerry Nagelkirk (Nagelkirk), the manager of the Hess station where Wix was murdered, was called to the scene of the murder on the evening of February 4, 1987. The police requested that Nagelkirk perform an inventory so as to determine how much money was missing. Nagelkirk determined that approximately $1,056.60 was missing from the Hess station. Although Wix had approximately $946.37 in various pockets on his person, over $100.00 was still missing. Nagelkirk testified that the inventory could have only been miscalculated by approximately $13.00 thereby leaving roughly $87 unaccounted for after the murder took place. Such evidence was sufficient to submit the case to the jury on the issue of whether there had been an armed robbery or murder while in the commission of an armed robbery.

The evidence presented in this case is substantial and raises more than a mere suspicion of appellant's guilt. The trial judge properly sent the case to the jury and his denial of the directed verdict motions is affirmed.

The other issues raised on appeal by appellant are dismissed pursuant to Supreme Court Rule 23 and *State v. Vanderbilt*, 287 S. C. 597, 340 S. E. (2d) 543 (1986).

Affirmed.

GREGORY, C. J., and CHANDLER, FINNEY and TOAL, JJ., concur.