479 S.E.2d 52

**The STATE, Respondent,**

v.

**Shawn Paul HUMPHRIES, Appellant.**

**No. 24542.**

Supreme Court of South Carolina.

Heard March 5, 1996.

Decided Dec. 9, 1996.

Rehearing Denied Jan. 10, 1997.

---

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, Columbia, for Appellant.

Attorney General Charles Molony Condon, Assistant Deputy Attorney General Donald J. Zelenka, Columbia, and Solicitor Joseph J. Watson, Greenville, for Respondent.

TOAL, Justice:

This is a death penalty case. Appellant Shawn Paul Humphries was tried and sentenced to death for the murder of Dickie Smith. Humphries admits his guilt but appeals his

sentence, arguing there were several errors during the sentencing phase of his trial. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On January 1, 1994, Humphries shot Dickie Smith, the owner of the Max–Saver convenience store in Fountain Inn, South Carolina. The evidence at trial established that on the night before the killing, Humphries and his friend Eddie Blackwell drove around drinking beer. They also stole a gun that night. Shortly after 7:00 a.m. on January 1, they entered the Max–Saver convenience store. Smith, who was working in the store, asked Humphries whether he wanted something hot, and Humphries flashed the stolen gun and replied that he wanted money.

There was some evidence to suggest Smith then reached under a counter to pull out a gun. The video camera at the store recorded the shooting. When Smith reached under the counter, Humphries fired a shot in Smith's direction and fled from the store. The bullet fired by Humphries struck Smith in the head, killing him. Meanwhile, Blackwell slumped to the ground in the store. The police arrested Blackwell at the scene and apprehended Humphries later that day.

During the sentencing phase of Humphries's capital murder trial, the State introduced evidence by Smith's family members about Smith's work ethic, his generosity and his close relationship with his young daughter Ashley. Smith's wife testified that she had to put Ashley in counseling after Smith's death because Ashley was so traumatized. After hearing all the evidence in the sentencing phase, the jury recommended a death sentence. The statutory aggravating factor relied on by the State, and found by the jury, was that the murder was carried out while in the commission of an armed robbery.

## LAW/ANALYSIS

On appeal, Humphries argues three issues: the propriety of the prosecution's use of attempted robbery as a statutory aggravating circumstance; the prosecution's failure to notify him that it intended to use evidence of victim impact; and the judge's failure to charge statutory mitigating circumstances relating to diminished capacity.

## A. ATTEMPTED ROBBERY AS STATUTORY AGGRAVATING CIRCUMSTANCE

■ Humphries first argues the trial court erred in instructing the jury that an attempted armed robbery accompanying murder is sufficient to constitute an aggravating circumstance under S.C.Code Ann. § 16–3–20 (Supp.1995). We disagree.

S.C.Code Ann. § 16–3–20 includes as an aggravating circumstance allowing imposition of the death penalty any murder carried out "while *in the commission of* . . . robbery while armed with a deadly weapon." The question in this case is whether the language "in the commission of . . . robbery while armed with a deadly weapon" requires the robbery to be completed or includes attempted armed robbery. Humphries argues that under the rationale of *State v. Childs*, 299 S.C. 471, 385 S.E.2d 839 (1989), the crime accompanying the murder must be completed in order to constitute a statutory aggravating circumstance.

*Childs* is inapposite. Childs was convicted of conspiracy, murder, and armed robbery and was sentenced to life without parole for thirty years. On appeal, he argued that the evidence against him was not sufficient to sustain the aggravating circumstance of robbery while armed with a deadly weapon. This Court held evidence money was missing from the Hess station where the victim was killed was "sufficient to submit the case to the jury on the question of whether there had been . . . [a] murder while in the commission of an armed robbery." *Id.* at 479, 385 S.E.2d at 844.

In *Childs*, we did not reach the issue before us in this case because we did not need to do so. Because there was evidence that an armed robbery was *completed*, the question whether the statutory language of section 16–3–20 includes *attempted* armed robbery was not properly before us there. Therefore, *Childs* is not relevant to the resolution of the present issue.

No South Carolina case squarely addresses the propriety of using an *attempted* crime accompanying murder as an aggravating circumstance supporting a request for the death penalty. However, courts from other jurisdictions have construed similar statutes to allow certain attempted felonies to consti-

tute aggravating circumstances to murder. *People v. Ramirez*, 98 Ill.2d 439, 75 Ill.Dec. 241, 250, 457 N.E.2d 31, 40 (1983), construed the Illinois death penalty statute, which provides that a defendant in a murder case is eligible for the death penalty if "the murdered individual was killed *in the course of another felony* if ... the felony was ... armed robbery." The defendant argued this language requires the other felony to be completed.

The Illinois Supreme Court disagreed. It found:

> Whether the murder is committed in association with the *actual completion* of the aggravating felony or only with the attempted felony is not crucial. The aggravating factor which triggers the application of the death penalty statute is that the murder be committed '*in the course of*' the aggravated felony. A murder may be committed 'in the course of' an armed robbery whether or not the actual armed robbery is consummated.

*Id.* (initial emphasis added) (quoting *People v. Walker*, 91 Ill.2d 502, 64 Ill.Dec. 531, 535, 440 N.E.2d 83, 87 (1982)); *see also Amadeo v. State*, 243 Ga. 627, 255 S.E.2d 718 (finding that "in the commission of" language does not require the felony at issue to have been completed), *cert. denied*, 444 U.S. 974, 100 S.Ct. 469, 62 L.Ed.2d 389 (1979). The Illinois court also rejected the defendant's argument that the statute would have included attempts expressly if the legislature had intended for attempted felonies to constitute aggravating circumstances justifying imposition of the death penalty. The court reasoned that the felony itself did not constitute the aggravating circumstance; rather, the aggravating circumstance was the commission of murder *in the course of* an aggravated felony. *Ramirez*, 75 Ill.Dec. at 251, 457 N.E.2d at 41.

In *Free v. Peters*, 12 F.3d 700 (7th Cir.1993), *cert. denied*, 513 U.S. 967, 115 S.Ct. 433, 130 L.Ed.2d 345 (1994), the United States Court of Appeals for the Seventh Circuit construed the same statute at issue in *Walker* and *Ramirez*. The Seventh Circuit rejected the defendant's contention the statute was void for vagueness when applied to a man sentenced to death for a murder committed in the course of an attempted rape. The Illinois Supreme Court had not yet decided *Walker*, when the defendant in *Free v. Peters* committed the murder for

which he was sentenced to death. Defendant argued, therefore, that the statute did not give him reasonable notice that he could be subject to the death penalty even if he did not complete the rape.

Writing for the Seventh Circuit, Judge Posner held the statute gave the defendant "all the notice to which the Constitution entitled him." *Id.* at 702. Judge Posner defended the Illinois Supreme Court's construction of the statute on the grounds that both the statutory language and policy concerns supported the court's interpretation. Specifically, the federal court of appeals found it an "unimportant detail" whether the killing occurs before or after the last act necessary to complete the accompanying felony. *Id.*

We agree with the rationale of *Walker, Ramirez, Amadeo,* and *Free.* The phrase "while in the commission of" implies acts that are concurrent with the murder. That the murder may occur before an armed robbery actually is completed does not mean that a robbery was not taking place. Accordingly, we uphold the instruction given by the trial judge.

## B. Victim Impact Evidence as Aggravating Circumstance

■ Humphries next argues that he was entitled under S.C.Code Ann. § 16–3–20(B) (Supp.1995) and the Due Process Clause to notice by the prosecution that the State planned to introduce victim impact testimony. We disagree, finding no right to notice under section 16–3–20 and no violation of Humphries's due process or Eighth Amendment rights.

S.C.Code Ann. § 16–3–20(B) provides that at the sentencing phase of a capital trial, "[o]nly such evidence in aggravation as the State has made known to the defendant in writing prior to the trial shall be admissible." The statute then lists certain aggravating factors requiring notice. Victim impact evidence is not listed as such a factor and presumptively, therefore, does not require notice.

We have recognized, however, that under limited circumstances, the notice requirement of section 16–3–20(B) applies to evidence not specifically enumerated in the statute and introduced by the prosecution during the sentencing phase. *See State v. Riddle (Riddle I),* 291 S.C. 232, 353 S.E.2d 138 (1987) (per curiam). In *Riddle I,* the prosecution introduced

the defendant's juvenile record without having given the defendant notice of its intent to do so. We found that the prosecution's failure to give notice of its intent to introduce the juvenile record violated section 16–3–20(B), reasoning a defendant in a capital case should have a "fair and complete opportunity" to respond to facts enhancing the likelihood the jury would recommend a death sentence. *Id.* at 237, 353 S.E.2d at 141. Because the defendant in that case had no genuine access to the documentary evidence introduced against him, we found, among other things, that the prosecution should have informed him of its intent to introduce his juvenile record. *Id.*

Unlike the juvenile records in *Riddle I*, victim impact evidence is not uniquely within the State's control. Capital defendants are as free as the State to gather information relating to the characteristics of the murder victim, and, therefore, generally have a fair and complete opportunity to respond to the State's factual allegations. This kind of evidence rarely creates the same risk that the defendant will be sentenced to death on the basis of information he has no opportunity to explain or deny.

In this case the defendant had a *full* opportunity to investigate victim impact, and, in fact, did so. Well before trial, defense counsel hired a private investigator who thoroughly investigated Dickie Smith's background, uncovering information about Smith's temper, his use of alcohol, and his prior marriage. The defense was perfectly free to cross examine the State's witnesses and to present rebuttal testimony; it had gathered the information necessary for effective rebuttal testimony. For whatever reason, the defense elected not to cross examine the State's witnesses or to present rebuttal testimony. It strains belief, however, for the defendant now to suggest that the prosecution's failure to provide him with notice of intent to introduce victim impact evidence somehow deprived him of an *opportunity* to respond to such evidence. Absent an indication the prosecution has improperly prevented the defendant from pursuing investigations related to the victim, we do not think the lack of notice of victim impact evidence implicates the policy and due process considerations underlying section 16–3–20 and due process. We find no

statutory or constitutional violation, and we see no way in which Humphries was prejudiced by the lack of notice.

Furthermore, many courts have found victim impact is neither an aggravating nor a mitigating circumstance, but simply relevant evidence that the jury may consider in determining an appropriate penalty. *See State v. Maxwell,* 647 So.2d 871 (Fla.Dist.Ct.App.) (although victim impact evidence informs the jury of the particular harm caused by the defendant, it is neither aggravating nor mitigating), *aff'd,* 657 So.2d 1157 (Fla.1995); *Evans v. State,* 333 Md. 660, 637 A.2d 117 (finding that although victim impact evidence is relevant consideration in sentencing scheme, it is not aggravating circumstance), *cert. denied,* 513 U.S. 833, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994). We concur with this view, which removes victim impact entirely from the statute's notice requirement.

Humphries also argues the amount of victim impact evidence presented was excessive, and the prosecution's use of that evidence during closing arguments was inappropriate and prejudicial. These issues were not preserved. Before and during trial, defense counsel objected to the victim impact evidence only on the basis that the defendant had not received prior notice that it would be introduced. Defense counsel made no contemporaneous objections relating to the amount of victim impact evidence or to the way in which it was used. Accordingly, the Court need not reach these issues. *See State v. Southerland,* 316 S.C. 377, 447 S.E.2d 862 (1994) (a contemporaneous objection is required to preserve issues for appellate review), *cert. denied,* 513 U.S. 1166, 115 S.Ct. 1136, 130 L.Ed.2d 1096 (1995).

In any case, the victim impact evidence comprised only twenty pages of testimony out of a total of two-hundred seventy-one pages of penalty phase testimony. Twenty pages of testimony gives only a brief glimpse into the life Humphries chose to extinguish, and we hardly think that meager amount of testimony excessive.

## C. FAILURE TO CHARGE ALL STATUTORY MITIGATING CIRCUMSTANCES

Lastly, Humphries argues the judge erred in failing to charge certain statutory mitigating circumstances relating to

diminished capacity or, in the alternative, in failing to obtain a waiver by the defendant. We disagree.

In the first place, this issue was not raised below and is not preserved for review. Prior to giving the jury charge during the sentencing phase, the judge informed defense counsel he planned to charge the following statutory mitigating circumstances: (1) the defendant has no history of prior criminal conviction involving the use of violence against another person, and (2) the age or mentality of the defendant at the time of the crime. The judge then gave counsel an opportunity to request a charge on any other statutory mitigating circumstances. Defense counsel replied: "Those two are the ones, I think, [that] are supported by the record." The judge responded: "All right. I find that I have examined the record, as well as the statute, and find that there are only two mitigating circumstances that warrant charging to the jury, and I concur with the Defendant's position."

The judge's procedure was in full compliance with *State v. Victor*, 300 S.C. 220, 387 S.E.2d 248 (1989), which requires the judge to make an initial determination of which statutory mitigating circumstances have evidentiary support and then to allow the defendant to request any additional statutory mitigating circumstances supported in the record. Here, the judge gave defense counsel an opportunity to request additional statutory mitigating circumstances. Defense counsel did not do so. Accordingly, *Victor* was satisfied. Moreover, defense counsel never requested charges on the statutory mitigating circumstances pertaining to diminished capacity. Absent such a request, the issue is not preserved. *See, e.g., State v. Longworth*, 313 S.C. 360, 438 S.E.2d 219 (1993) (failure to request jury instruction acts as waiver of right to complain about issue on appeal), *cert. denied*, 513 U.S. 831, 115 S.Ct. 105, 130 L.Ed.2d 53 (1994).

In any case, the record does not contain evidence justifying the submission to the jury of additional statutory mitigating factors. The *only* evidence appellant relies upon to show diminished capacity is his own statement that he and his accomplice were drinking beer the night before the murder. That evidence, standing alone, is insufficient to support a charge on diminished capacity. *See State v. Drayton*, 293 S.C.

417, 361 S.E.2d 329 (1987), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1060, 98 L.Ed.2d 1021 (1988).

### CONCLUSION

We have conducted the proportionality review pursuant to S.C.Code Ann. § 16–3–25 (1985). The sentence was not the result of passion, prejudice, or any other arbitrary factor; the evidence supports the finding of the aggravating circumstance; and the sentence is not disproportionate to that imposed in similar cases. *State v. Young,* 319 S.C. 33, 459 S.E.2d 84 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996); *State v. Thompson,* 278 S.C. 1, 292 S.E.2d 581, *cert. denied,* 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982). For the foregoing reasons, the defendant's conviction and sentence are AFFIRMED.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.