2314

The STATE, Respondent v. Mitchell Lee LUNSFORD, Appellant.

(456 S.E. (2d) 918)

Court of Appeals

242

*Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, Columbia, for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr., and Asst. Atty. Gen. Miller W. Shealy, Jr.; and Sol. Richard A. Harpootlian, Columbia, for respondent.*

Heard Feb. 8, 1995.

Decided Mar. 13, 1995; Reh. Den. May 3, 1995.

GOOLSBY, Judge:

A jury convicted Mitchell Lee Lunsford of trafficking in cocaine. Lunsford appeals. We affirm.

## I.

Lunsford charges the trial judge committed reversible error in not granting him a mistrial because the solicitor, who maintained an "open-file" policy, failed before trial to deliver to Lunsford pursuant to discovery requests a "proffer" the investigating officer prepared following discussions with Michael Wright, a prosecution witness, and a five-page statement Wright gave to the police.

Defense counsel first became aware of the proffer during the cross-examination of the officer, Scott Higgins. When defense counsel complained of the solicitor's failure to give him the proffer earlier, the trial judge declared a recess. During the recess, the solicitor made the proffer available to defense counsel and the trial judge "gave [defense counsel] [an] opportunity to show the proffer . . . to [Lunsford] and let [Lunsford] decide whether or not he would seek a mistrial or continue to go forward."

The trial judge then extended the recess and broke for lunch. During the lunch recess, the solicitor sent over to defense counsel a five-page statement signed by Wright.

After the lunch recess, defense counsel moved "for a mistrial with prejudice on [the ground of] prosecutorial misconduct" and, in the alternative, for the exclusion of Wright's testimony.

The trial judge, however, denied the motion, but offered "[to] give [defense counsel] as much time as" defense counsel thought he needed to consider the new material. Defense counsel informed the trial judge he "[was] prepared to go forward as long as [the trial judge] [would] give him the evening recess to prepare. . . ." As counsel concluded their arguments on the solicitor's failure to provide the proffer and statements before trial, the trial judge stated he would give defense counsel "overnight and so much time as [defense counsel] need[ed] to review [the statements] thoroughly before [defense counsel] cross-examined. . . ."

Defense counsel then concluded his cross-examination of Higgins without asking for additional time to study the proffer and statement. His cross-examination of Wright, however, did not take place until the next day, thus giving defense counsel an opportunity overnight to review the proffer and statement. When trial resumed after the overnight recess, defense counsel did not ask for any additional time to study the disputed material or otherwise prepare for his cross-examination of Wright.

The trial judge, notwithstanding the solicitor's open-file policy, committed no reversible error when he refused to declare a mistrial on account of the solicitor's failure prior to trial to provide defense counsel with the proffer and statement, evidence that fell, because it was impeachment evidence, within the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. (2d) 215 (1963). *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed. (2d) 481 (1985). Defense counsel had access to the questioned material before he resumed his cross-examination of Higgins and he elected to proceed with Higgins's cross-examination without taking advantage of the trial judge's offer to provide him with "as much time as" he thought he needed to review the previously undisclosed evidence and to prepare for cross-examination of the witness in light of this new evidence. Moreover, defense counsel sought and obtained an overnight opportunity to review both the proffer and the statement before he cross-examined Wright; and defense counsel, without seeking additional time to study the material and prepare further for cross-examination, commenced his cross-examination of Wright the day after he made the mistrial motion. *See Gorham v. Wain-*

*wright,* 588 F. (2d) 178 (5th Cir. 1979) (denying the defendant's mistrial motion and holding the defendant was not prejudiced by the prosecution's failure to turn over certain reports prior to trial because, although defense counsel requested and received a ten-minute recess to review the new evidence, he did not request a continuance); *see also* 2 WAYNE R. LAFAVE & JEROLD H. ISRAEL, *CRIMINAL PROCEDURE* § 19.5, at 545-46 (1984) (a defendant's failure to request a continuance when a disclosure of exculpatory evidence is first made at trial "is often viewed as automatically negating any claim of actual prejudice."); *State v. Patterson,* 290 S.C. 523, 351 S.E. (2d) 853 (1986) (subsequent history omitted) (the state's failure to produce discovery material consisting of a taped interview with the prosecution witness until the morning jury selection began did not warrant a dismissal or a mistrial where the trial court allowed defense counsel to listen to the tape before the witness took the witness stand and the trial court delayed cross-examination until the next day); *State v. Scipio,* 283 S.C. 124, 322 S.E. (2d) 15 (1984) (the trial court did not abuse its discretion in not granting a mistrial as a sanction for the state's failure to comply with a discovery request by not timely producing a composite drawing made from the victim's description of the robbery suspect where the defendant cross-examined the victim about the drawing); *State v. Davis,* 309 S.C. 56, 419 S.E. (2d) 820 (Ct. App. 1992) (the trial court's failure to suppress evidence of a defendant's oral statements because the prosecution did not disclose the statements despite a timely request for them upheld where the defendant was permitted to view and copy the prosecution's file and did not request a continuance or recess to review the prosecution's file).

## II.

Lunsford next charges the trial judge with reversible error in allowing testimony from Wright concerning Lunsford's prior dealings in drugs.

During direct examination, when asked to describe his relationship with Lunsford, Michael Wright testified, "I met [Lunsford] through a friend of mine. . . . [T]he best thing I can say is it dealt around—we went out a few times, but it dealt around drugs." Defense counsel did not object to this response.

After the prosecutor directed four more questions to Wright, he asked, "Prior to your arrest that caused you to go into drug treatment, what kind of dealings did you have with . . . Lunsford?"

Wright answered, "I bought from Mitch. A lot of people—well—."

At this point, defense counsel objected and the trial judge sustained the objection. Moments later, he sent the jury out and defense counsel moved for a mistrial because Wright had gone outside the trial judge's earlier ruling that Wright could only testify about his personal involvement with Lunsford. The trial judge declared a recess to consider the mistrial motion.

When the trial judge returned, defense counsel confirmed he had talked with Lunsford and Lunsford had indicated he did not wish to move for a mistrial and preferred "to go forward." Defense counsel also told the trial judge that he had discussed with Lunsford "whether or not the [trial judge] should give a curative instruction." Lunsford, according to defense counsel, did not want the trial judge to give a curative instruction.

The trial judge turned and addressed Lunsford, telling him, "And you understand that in light of [Wright's] testimony that this court . . . if it were pursued by you, . . . would in fact grant a mistrial, and then you would have an opportunity to be tried by another jury. Do you understand that?"

Lunsford answered, under oath, "Yes, sir." He went on to confirm that he neither wanted a mistrial nor a curative instruction in which the trial judge "would tell [the jury] to disregard any testimony about any activities with other people, the objectionable portion of the testimony."

■ In refusing the trial judge's offer of a mistrial and his offer of a curative instruction, Lunsford waived any complaint he had to the challenged testimony. *See State v. Hartley*, 307 S.C. 239, 414 S.E. (2d) 182 (Ct. App. 1992) (holding the state's attempt to impeach the defendant by asking him about his prior convictions afforded no basis for an appeal because the defendant refused the trial court's offer to prepare a curative instruction); *see also* 89 C.J.S. *Trial* § 661, at 504 (1995) ("The erroneous admission of evidence may be waived . . . by some affirmative act done after the ruling on the admission of the evidence which amounts to an express or implied

assent to the reception of the evidence or by acts or statements inconsistent with objections previously urge . . . ."); *cf. Osborn v. League Life Ins. Co.*, 20 Mich. App. 19, 173 N.W. (2d) 724 (1969) (holding the defendant waived an objection concerning the admission of an exhibit because the defendant refused the trial court's offer of a mistrial).

### III.

Finally, Lunsford charges the trial judge with reversible error in allowing the solicitor, when responding to defense counsel's argument about the prosecution's failure to present fingerprint evidence, to tell the jury "so don't fall for that," a remark the solicitor later repeated in his argument, and in allowing the solicitor to tell the jury "that defense counsel was 'one of the finest defense attorney[s].' " He argues both comments were improper.

We need not address the propriety of the first comment, ■ "so don't fall for that." A timely objection directed to the comment was not interposed, neither when the comment was first made nor when it was later repeated. *See Cummings v. Tweed*, 195 S.C. 173, 10 S.E. (2d) 322 (1940) (upholding the denial of the defendant's new trial motion where the defendant's counsel did not timely object to opposing counsel's comments during his closing argument). In any case, the remark was not improper. In telling the jury, "so don't fall for that," the solicitor was merely telling the jury that it should not credit defense counsel's argument regarding the absence of fingerprint evidence. A prosecutor may fairly point out " 'matters which [the jury] should not consider.' " *State v. Durden*, 264 S.C. 86, 92, 212 S.E. (2d) 587, 590 (1975).

We agree, however, the solicitor's comment on the quality of Lunsford's lawyer, to which defense counsel did ■ timely object, was improper. *See Office Equip. Co. v. Smerke*, 136 S.W. (2d) 972 (Tex. Civ. App. 1940) (wherein the court held improper a comment that the jury should watch opposing counsel because if it did not he was smart enough to make it believe something that was not so); *cf. Cummings*, 195 S.C. at 186, 10 S.E. (2d) at 328 (wherein the court held improper a statement of counsel that opposing counsel's objecting to admission of evidence was an improper attempt to conceal something from the jury). Counsel should not express, while

arguing to a jury, a personal judgment about opposing counsel, including opposing counsel's standing in the legal community. 88 C.J.S. *Trial* § 185, at 368 (1955). Still, the remark does not warrant a reversal and the grant of new trial.

Following defense counsel's objection to the solicitor's comment, the trial judge sufficiently cautioned the jury not to consider the improper argument when he warned, "Let's stay with the record and inference[s] to be draw[n] from it." Further, Lunsford failed to demonstrate, as he was required to do, that the result of the solicitor's comment was to materially prejudice his right "to obtain a fair and impartial trial." *Cummings*, 195 S.C. at 188, 10 S.E. (2d) at 329; *see Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed. (2d) 144, 157 (1986) ("The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "); *Durden*, 264 S.C. at 93, 212 S.E. (2d) at 591 (holding the burden is on the defendant to prove an improper closing argument prejudiced the defendant to the extent that the defendant was denied a fair trial).

Affirmed.

SHAW, J., and HOWARD, Acting J., concur.