24351

The STATE, Respondent v. Bobby Lee HOLMES, Appellant.

(464 S.E. (2d) 334)

Supreme Court

*Chief Attorney Daniel T. Stacey* and *Senior Assistant Appellate Defender Wanda H. Haile,* both of *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General Charles M. Condon, Chief Deputy Attorney General Donald J. Zelenka,* both of Columbia; and *Solicitor Thomas E. Pope,* York, *for respondent.*

Heard Apr. 5, 1995.

Decided Nov. 27, 1995.

CHANDLER, Acting Associate Justice:

Appellant was convicted of murder and sentenced to death. Review of appellant's direct appeal has been consolidated with the sentence review mandated by S.C. Code Ann. § 16-3-25 (1985). We affirm.

## FACTS

The victim in this case, Mary Stewart, was eighty-six years old when she was brutally beaten, sodomized, and robbed on the morning of December 31, 1989. She suffered severe trauma to her head and massive damage to her brain. Within several hours after the assault, she became comatose. Despite efforts to save her, Stewart lapsed into a vegetative state and eventually died on March 10, 1990.

After a four-day trial in 1993, appellant was convicted of Stewart's murder and received the death penalty. He was also convicted of first-degree burglary, first-degree criminal sexual conduct, and robbery. On appeal, he alleges the trial court erred during voir dire and during both the guilt and sentencing phases of trial.

## I. VOIR DIRE ISSUE

### A. *Venireperson D. Brown*

In response to questioning by the State during voir dire, venireperson D. Brown stated she did not believe in the death penalty and therefore could only vote for life imprisonment. The trial court then excused Brown without giving appellant an opportunity to question her. Appellant argues this was error. We agree. See *State v. Atkins*, 293 S.C. 294, 360 S.E. (2d) (1987), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2913, 115 L.Ed. (2d) 1076 (1991), *overruled on other grounds*, *State v. Torrence*, 305 S.C. 45, 406 S.E. (2d) 315 (1991); S.C. Code Ann. § 16-3-20(D) (Supp. 1994). However, for the following reason, we hold that the error was harmless.

Under the jury selection procedure used in this case with appellant's consent, the names of the first twenty-seven venirepersons qualified by the trial court were placed on a list from which twelve were selected to serve. The names of the next four qualified venirepersons were placed on a list from which one alternate was chosen.

Prior to the voir dire of Brown, twenty-eight venirepersons had been qualified and the first list filled. Consequently, assuming Brown would have been qualified had appellant been given an opportunity to question her concerning her beliefs, Brown's name would have merely been placed on the alternate juror list. Because the alternate juror chosen in appellant's case was never called, the error in failing to give appellant his opportunity to question Brown was, therefore, harmless. *Cf. State v. Green*, 301 S.C. 347, 392 S.E. (2d) 157, *cert. denied*, 498 U.S. 881, 111 S.Ct. 229, 112 L.Ed. (2d) 183 (1990) (any error in the qualification of an alternate capital juror is harmless beyond a reasonable doubt when no alternates were used in the case).

## B. *Venireperson L. Smith*

In response to questioning by defense counsel during voir dire, venireperson L. Smith stated she could give either a life or death sentence, depending on the evidence presented. However, upon questioning by the State, Smith stated she would not sign a death penalty verdict. After the trial court questioned Smith further, the court accepted the State's challenge for cause and excused Smith. Appellant argues this was error. We disagree.

The decision to qualify or not qualify a prospective juror to serve in a death penalty case is a matter of discretion which is not reversible on appeal unless wholly unsupported by the evidence. *State v. Green, supra.* In determining whether a trial court abused its discretion in qualifying or disqualifying a challenged juror, individual responses of the juror must be examined in light of the entire voir dire. *Id; State v. Caldwell*, 300 S.C. 494, 388 S.E. (2d) 816 (1990). In this case, we have reviewed the entire voir dire of venireperson Smith and conclude the trial court did not abuse its discretion in accepting the State's challenge for cause.

## C. *Venireperson M. Hutto*

At the outset of voir dire, venireperson M. Hutto stated she thought a defendant had to prove his or her innocence. However, when told the law presumed a defendant was innocent, and asked if she could follow this presumption, she answered yes. Thereafter, Hutto was qualified by the trial court. On appeal, appellant argues this was error because Hutto's responses indicated she could not accept the presumption of innocence. We disagree. After reviewing Hutto's entire voir dire, we conclude there was no abuse of discretion in qualifying her to serve. *State v. Green, supra; State v. Caldwell, supra.*

## II. TRIAL ISSUES

### A. *Impeachment of Witness Paul Burton*

At trial, the State called Paul Burton to testify that while incarcerated in the York County Jail with appellant, appellant made an incriminatory statement. Specifically, Burton testified that, while watching a pornographic movie in which two men were sodomizing a woman, appellant stated: "That's the way I done the old bitch . . . and she liked it, too."[1]

Prior to Burton's testimony, appellant moved for permission to impeach Burton with his 1984 conviction for violating the "Peeping Tom" statute.[2] The trial court denied appellant's motion, holding that a violation of the "Peeping Tom" statute was not a crime of moral turpitude. Appellant argues this was error. We agree. *See State v. Harris,* 293 S.C. 75, 358 S.E. (2d) 713 (1987) (a violation of the "Peeping Tom" statute is a crime of moral turpitude, and a conviction for such an offense can be used for impeachment purposes). However, this Court must consider whether the trial court's error was harmless.

In *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed. (2d) 674 (1986), the Supreme Court set forth certain factors an appellate court should consider in determining whether the erroneous exclusion of evidence of a witness' bias constitutes harmless error. These include: the

---

[1] Apparently, for a period of time, a trustee at the York County Jail showed pornographic movies to the inmates.

[2] *See* S.C. Code Ann. § 16-17-470 (Supp. 1994).

importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, whether other evidence corroborates or contradicts the witness' testimony, the extent of cross-examination otherwise permitted, and the overall strength of the State's case.

While the harmless error ruling in *Van Arsdall* dealt specifically with witness bias, we hold that the *Van Arsdall* factors apply with equal force in determining a harmless error violation relating to any issue of witness credibility. *See State v. Gadsden*, 314 S.C. 229, 442 S.E. (2d) 594 (1994). The following is a review of these factors in the context of appellant's case.

The victim, Mary Stewart, was attacked in her home at approximately 6:00-6:30 a.m. on a Sunday morning. Prior to her becoming comatose, she gave a description of her assailant to the police. Shortly before the attack, at approximately 5:30 a.m., appellant was seen in Stewart's neighborhood wearing clothing similar to that described by the victim.

Appellant was arrested at his residence several hours after the crime. At the time of the arrest, the police recovered clothing from appellant similar to that described by Stewart. Fibers consistent with those comprising appellant's sweatshirt, jeans, and underwear were found in Stewart's home on her sheets and nightgown.[3] In addition, human blood was found on appellant's jeans, underwear, and tank top. An examination of the victim and her clothing revealed that she had bled during the attack. Further, at the time of his arrest, appellant had $44 in his wallet. Stewart's assailant stole $40 from her pocketbook, and a friend of appellant testified he gave appellant $3 shortly before the crime.

In addition to Burton's testimony concerning appellant's incriminatory statement, another witness for the State, Jackie Childers, testified that while incarcerated with appellant, appellant bragged several times about breaking into Stewart's home and raping Stewart. Further, Childers testified that appellant gave various details of the crime, including the fact a phone had been removed from the wall of Stewart's home, and the fact appellant's shirt had blood on it.

---

[3] After his arrest, appellant gave a statement to the police in which he denied any knowledge of Stewart and denied ever being in Stewart's home.

While Burton's 1984 conviction for violating the "Peeping Tom" statute was not made known to the jury, the fact Burton had been convicted for unlawful use of a telephone was disclosed to the jury by both the State and the defense. Additionally, during cross-examination, Burton's probation violation and his service of eleven months in prison were made known to the jury. Further, during cross-examination, defense counsel threw a document on the floor in front of Burton and the jury and asked Burton if that was his "rap sheet," and if he had a record. Burton responded, "Yes, sir, I do."

After considering the *Van Arsdall* factors in light of the evidence against appellant, the testimony of witnesses other than Burton, and what occurred during cross-examination of Burton, we hold that the trial court's error regarding Burton's 1984 conviction for violating the "Peeping Tom" statute was harmless beyond a reasonable doubt.

### B. *Introduction of Appellant's Wallet into Evidence*

Appellant's wallet was introduced during the *guilt* phase over his general objection that it had no relevance. After the verdict in the *sentencing* phase, appellant moved for a new trial based on prejudice arising from various items contained in the wallet, including a bond form for a driving under suspension charge in municipal court, and cigarette rolling papers. The trial court denied the motion. Appellant argues this was error.

Because a new trial motion may not be used to raise an evidentary issue for the first time, appellant's argument is not preserved for review. *See State v. Robinson*, 238 S.C. 140, 119 S.E. (2d) 671 (1961), *overruled on other grounds, State v. Torrence, supra.* Further, on the merits, we hold that the trial court did not abuse its discretion in denying the motion. *State v. Simmons*, 279 S.C. 165, 303 S.E. (2d) 857 (1983) (the decision to grant a new trial is within the discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of that discretion).

### C. *Admissibility of Appellant's Clothes*

Appellant argues the clothing seized when he was arrested and processed at the police station should have been suppressed because the arresting officer did not have a warrant in his possession. We find this argument meritless.

The record indicates a warrant had been issued prior to appellant's arrest and that the arresting officer, while not in possession of the warrant itself, was acting pursuant to the warrant when the arrest was made. Consequently, the trial court did not err in refusing the motion to suppress. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed. (2d) 639 (1980); *State v. Sims*, 304 S.C. 405 S.E. (2d) 377 (1991), *cert. denied*, 502 U.S. 1103, 112 S.Ct. 1193, 117 L.Ed. (2d) 434 (1992).

D. *Charge on Assault and Battery with Intent to Kill*

Appellant argues the trial court erred in refusing to charge assault and battery with intent to kill as a lesser included offense of murder. We disagree. When there is no dispute the victim died as a result of the battery alleged in the murder indictment, a charge on assault and battery with intent to kill is not warranted. *State v. Fields*, 314 S.C. 144, 442 S.E. (2d) 181 (1994).

Appellant's remaining arguments are not preserved for review. *State v. Torrence, supra* (a contemporaneous objection on proper grounds is required to preserve an error for appellate review); *State v. Williams*, 303 S.C. 410 S.E. (2d) 168 (1991) (issues not raised to and ruled on by the trial court are not preserved for appeal); *State v. Bailey*, 298 S.C. 1, 377 S.E. (2d) 581 (1989) (appellant may not object to evidence on one ground at trial and then argue an alternate ground on appeal).

## III. PROPORTIONALITY REVIEW

After reviewing the entire record, we are convinced the death sentence in appellant's case was not the result of passion, prejudice, or any arbitrary factor. In addition, the jury's finding of aggravating circumstances is supported by the evidence. *See* S.C. Code Ann. § 16-3-25 (1985). Further, we hold the death penalty here is not excessive or disproportionate to the penalty imposed in similar capital cases. *See State v. Middleton*, 295 S.C. 318, 368 S.E. (2d), *cert. denied*, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed. (2d) 158 (1988); *State v. Singleton*, 284 S.C. 388, 326 S.E. (2d) 153 (1985), *cert. denied*, 471 U.S. 1111, 105 S.Ct. 2346, 85 L.Ed. (2d) 863 (1985), *overruled on other grounds, State v. Torrence, supra* (abolishing *in favorem vitae* review). We therefore affirm appellant's convictions and sentence.

Affirmed.

TOAL, MOORE and WALLER, JJ., concur.

FINNEY, C.J., dissents in separate opinion.

FINNEY, Chief Justice, dissenting:

I respectfully dissent. In my opinion, the denial of the right to impeach State's witness Burton was not harmless, and this error mandates a new trial. Further, the failure to accord appellant his right to allocution requires, at a minimum, that the case be remanded for resentencing.

The evidence implicating appellant, other than his statements to Burton and Childers, was entirely circumstantial. Although fiber samples from clothes and bedding showed consistencies, the State's expert admitted that all items manufactured from the same run of material would be consistent. Further, the tests could not identify the blood as either appellant's or the victim's, but only as human. The victim's description of her assailant was so vague and contradictory that the only identifying fact which could be drawn from it was that the perpetrator was male. Finally, as the majority admits, the clothing description given by the victim was merely similar to that worn by appellant.

No witness corroborated or contradicted Burton's testimony regarding the patently offensive and incriminating jail statement he allegedly overheard. The State's only other direct evidence was the statements made to inmate Childers. Childers' credibility, however, was thoroughly impeached by his admissions that he had repeatedly lied to obtain drugs, had numerous fraud convictions, and had spent a lot of time in jail. *State v. Gunn*, 313 S.C. 124, 437 S.E. (2d) 75 (1993).

While the jury knew that Burton was in jail in January 1990 for violating his probation on a charge of unlawful use of a telephone, his circumstances contrasted sharply with those of Childers. The jury knew, for example, that the unlawful act consisted of "cussing" on the phone, and that the probation violation arose from Burton's failure to pay a fine. The criminal offense for which Burton was convicted was minimized in the jury's eyes, and sympathy was generated by his testimony that he was jailed for failing to meet his financial obligation, and thus violating his probation, after breaking his leg and

losing his job. Unlike inmate Childers, Burton was in no way impeached as a liar, drug user, or career criminal.

Burton's testimony was the only unimpeached direct evidence of appellant's guilt, and as such was critical to the State's case. As noted above, no other witness either corroborated Burton's statement nor contradicted it. It was not cumulative to other evidence in the record. While Burton was cross-examined, this cross-examination revealed no independent basis of bias on the part of the witness. As noted above, the State's case was not particularly strong. Applying the *Van Arsdall*[1] factors here, I conclude the erroneous denial of impeachment was not harmless error and would reverse and remand for a new trial.

I also disagree with the majority's apparent conclusion that the failure to accord a capital defendant the right of allocution is an oversight which must be raised at trial in order to be preserved for appeal. We have consistently remanded for resentencing capital cases in which the trial judge neglected to ask the defendant whether he had anything to say before being sentenced, despite the lack of a contemporaneous objection, and without reliance on the doctrine of *in favorem vitae. State v. Jefcoat*, 20 S.C. 383 (1884); *State v. Trezevant*, 20 S.C. 363 (1884); *see also State v. Washington*, 1 S.C. Law (1 Bay 120) 49 (1791). In *Trezevant* we indicated that allocution was "indispensably necessary" to imposition of a capital sentence. This error alone requires this case be remanded for resentencing.

For the foregoing reasons, I respectfully dissent.

---

[1] *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed. (2d) (1986).