476 S.E.2d 683

**The STATE, Respondent,**

v.

**James Bernard WHIPPLE, Appellant.**

**No. 24458.**

Supreme Court of South Carolina.

Heard Jan. 10, 1996.

Decided July 1, 1996.

Rehearing Denied Aug. 2, 1996.

Daniel T. Stacey, Chief Attorney, South Carolina Office of Appellate Defense, and Jeffrey P. Bloom, Richland County Public Defender, Columbia, for appellant.

Charles Molony Condon, Attorney General, John W. McIntosh, Deputy Attorney General, Salley W. Elliott, Assistant Deputy Attorney General, Harold M. Coombs, Jr., Columbia, and Solicitor Ralph J. Wilson, Conway, for respondent.

WALLER, Justice:

Whipple was convicted of murder, criminal sexual conduct in the first degree, armed robbery, and grand larceny of a motor vehicle. He was respectively sentenced to death, thirty years, twenty-five years, and ten years. We affirm.

## FACTS

Nineteen year old Heather Stigliano (Victim) moved from Pennsylvania to Myrtle Beach in September, 1991. She was last seen alive on November 4, 1991. Her body was found in her apartment on November 11, 1991. She had numerous stab wounds, had been repeatedly beaten in the head with a lamp and an iron, had been strangled with a lamp cord, and had a dish towel stuck in her mouth. She was partially nude and had apparently been sexually assaulted.

On November 4, 1991, Whipple was spotted in Pawley's Island driving Victim's automobile. On November 14, while still driving Victim's vehicle, Whipple was stopped by police in Florida for a traffic violation. Victim's purse was found in the vehicle, as were a steak knife, parts of an iron, and a wooden lamp base. Numerous other personal items belonging to Victim were found in Whipple's motel room. Whipple subsequently admitted to killing Victim.

## ISSUES

1. Did the Solicitor enter a plea agreement under which Whipple was to receive a life sentence?

2. Did the court improperly comment on the weight of the testimony?

3. Was the court's reasonable doubt charge improper?

4. Was Whipple denied a reasonable opportunity to review discovery materials turned over by the prosecution the week prior to trial?

5. Were disciplinary records from Whipple's incarceration improperly admitted?

6. Did the court err in refusing to charge that Whipple would not be eligible for parole for thirty years if sentenced to life or, alternatively, in failing to give a plain meaning charge?

7. Was evidence of Victim's character improperly excluded?

## 1. PLEA AGREEMENT

Whipple asserts the State reneged on its agreement to allow Whipple to plead guilty in exchange for a life sentence. We disagree. The trial court correctly ruled there was no plea agreement.

Whipple was arrested on November 14, 1991. In January, 1992, defense counsel met with the solicitor seeking to negotiate an agreement under which Whipple would plead guilty in exchange for a life sentence. The solicitor testified he told Whipple's attorneys he would consider a life sentence if substantial mitigating evidence were demonstrated.

On August 25, 1993, defense counsel returned to the solicitor with evidence that Whipple had a history of physical and sexual abuse. Although aware the matter had been turned over to an assistant solicitor, counsel preferred to negotiate directly with the solicitor. According to defense counsel, they were told by the solicitor after presentation of the mitigating evidence that "if it were up to him, he would allow the case ... to plead to a life sentence, but ... the decision now rested with [the assistant solicitor]." However, Solicitor Wilson testified that, although he never specifically advised defense counsel he did not find the mitigating evidence sufficient, he made it clear he was not going to give Whipple a life sentence and he did not intend to intervene and take the case from the assistant solicitor. He testified, further, that he felt the mitigating evidence was lacking.

When the assistant solicitor was removed from the case in November, 1993, defense counsel again approached the solicitor concerning a life sentence. At this time, they were told that, although he may have accepted a plea earlier, too much time and money had now been spent on the case.

Whipple cites *State v. Thrift*, 312 S.C. 282, 440 S.E.2d 341 (1994), contending he is entitled to the benefit of the alleged plea agreement. In *Thrift*, we held that where a guilty plea rests on a promise which can be said to be a part of the inducement or consideration, the agreement must be fulfilled. We find *Thrift* inapplicable to the present case. Although the solicitor agreed to consider a plea agreement if Whipple provided substantial mitigating evidence, he never promised a life sentence nor was a plea agreement ever reached.

■ Whipple claims it is inequitable for the State to induce him to reveal his mitigation strategy without being bound by a plea agreement. We disagree.

The mere fact that a defendant chooses to reveal otherwise undiscoverable facts in the hope of securing a favorable plea agreement does not bind the State to accept the defendant's terms. Whipple may not attempt to create a firm commitment out of plea negotiations. *State v. Thompson*, 278 S.C. 1, 292 S.E.2d 581, *cert. denied*, 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982) (solicitor's plea negotiations to consider life sentence did not prevent State from seeking death penalty),

*overruled in part on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991) (Toal, J., concurring). To accept Whipple's contention would leave the determination of whether the evidence was in fact "substantial" to the defendant and effectually bind the solicitor without being able to judge the evidence for himself. Such a position is untenable.

■ The decision whether to offer a plea bargain is within the solicitor's discretion. *See State v. Chisolm,* 312 S.C. 235, 439 S.E.2d 850 (1994). This Court is not empowered to infringe upon the exercise of this prosecutorial discretion. *State v. Thrift, supra.* We will not disturb the fact findings of a trial court relative to a plea agreement when the findings are supported by the evidence and not clearly wrong or controlled by error of law. *State v. Amerson,* 311 S.C. 316, 428 S.E.2d 871 (1993).

Here, it was at all times within the solicitor's sole discretion whether to offer a plea agreement. We find ample evidence in the record supporting the trial court's conclusion that he never did so in this case.

## 2. "SO–CALLED EXPERTS"

■ The jury was instructed that credibility of witnesses was for its determination. In so charging the jury, the court stated, "That includes the so-called experts. That is still left to you, and only you, to determine their credibility, so this doesn't just mean law witnesses; this means any and all witness, included expert witnesses." Shortly after, the judge instructed the jury that if he should in any way intimate an opinion, the jury should disregard it. Whipple claims the reference to so-called experts was an improper comment on the weight of the evidence. We disagree.

The first definition of the term "so-called" in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2161 (1976) is "commonly named: popularly so termed." It is only as a second definition that it is defined as "falsely or improperly so named or designated." Contrary to Whipple's contention, we find use of the term did not indicate the trial court's opinion on the weight to be accorded the experts.

In any event, the trial court's language concerning the "so-called experts" applied to all experts, not just defense experts.

Clearly, the comment applied with equal force to all experts, both for the State and for Whipple. Accordingly, Whipple suffered no prejudice. *See e.g. Graves v. State,* 309 S.C. 307, 422 S.E.2d 125 (1992) (improper comment concerning a witnesses testimony not prejudicial to defendant).

Finally, the judge's subsequent instruction that the jury should disregard any intimation by him as to the weight of the evidence was sufficient to cure any error. *See State v. Robinson,* 276 S.C. 435, 279 S.E.2d 372 (1981).

### 3. REASONABLE DOUBT CHARGE

Whipple contends the trial court's reasonable doubt instruction violated *State v. Manning,* 305 S.C. 413, 409 S.E.2d 372 (1991), *cert. denied,* 503 U.S. 914, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992),[1] and due process. We disagree.

During the course of his charge, the Court stated three times that a reasonable doubt was one "for which you could give a reason." However, he also advised, in accordance with *Manning,* that it was "the kind of doubt that would cause a reasonable person to hesitate to act." At no time did the trial court use the terms "moral" or "grave certainty," nor was the term reasonable doubt equated with a "substantial doubt."

The charge given in this case is similar to the one upheld by this Court in *State v. Hoffman,* 312 S.C. 386, 440 S.E.2d 869 (1994) (upholding charge notwithstanding judge's repeated statement it was one for which you could give a reason). *See also State v. Johnson,* 315 S.C. 485, 445 S.E.2d 637 (1994); *State v. Kirkpatrick,* 462 S.E.2d 884 (S.C.Ct.App.1995) (Davis Adv. Sh. No. at 7). We find no error.

### 4. REVIEW OF DISCOVERY MATERIALS

During jury selection, defense counsel requested to delay the start of trial for one day to review numerous discovery materials which had been turned over by the prosecution during the week. The solicitor maintained the materials were merely duplicative copies of earlier materials which had been turned over in piecemeal fashion. The trial court delayed ruling on the matter until completion of jury selection.

---

1. In *Manning,* this Court suggested a definition of reasonable doubt as "one which would cause a reasonable person to hesitate to act."

Defense counsel had an opportunity to review the materials overnight and the next morning, at approximately 10:00 am, defense counsel renewed the motion, noting he had received some 479 pages of new materials. The court granted counsel until 4:00 pm that afternoon, less the time it took to conduct opening arguments, to review the materials. When they returned at 4:00 pm, counsel advised the "[d]efense is ready." Whipple now contends he was given inadequate time to review the materials.

Although Whipple originally sought until the next day to review the documents, he sought no further time after being given until 4:00 pm to do so, and then expressly conceded he was ready to go forward. By proceeding to trial without further objection, Whipple waived any right to complain. *State v. Brown*, 274 S.C. 48, 260 S.E.2d 719 (1979); *State v. Orr*, 225 S.C. 369, 82 S.E.2d 523 (1954).

In any event, we find Whipple was given a sufficient opportunity to review the materials and suffered no prejudice from the court's refusal to give a longer recess. *State v. Hoffman*, 312 S.C. 386, 440 S.E.2d 869 (1994).

### 5. WHIPPLE'S DISCIPLINARY RECORD

At sentencing, the State introduced Whipple's disciplinary record listing various minor infractions. Whipple contends the disciplinary record was inadmissible as it contained hearsay. In particular, Whipple complains of a drawing contained in the record depicting a bottle of "Cold Filter Whipple." The drawing was done by another inmate and states "If you want to be a woman killer, drink some cold filtered Whipple and get yourself fried!"

This issue is not preserved for review. The trial court specifically ordered defense counsel and the State to go through the records prior to their distribution to the jury and see what would be prejudicial and have nothing to do with the trial. There is no indication in the record that this was ever done or that counsel ever specifically objected to the drawing. *State v. Epes*, 209 S.C. 246, 39 S.E.2d 769 (1946) (party may not complain of an error which his own conduct has induced); *State v. Wilkins*, 310 S.C. 81, 425 S.E.2d 68 (Ct.App.1992)

(waiver of objection by refusal to take advantage of a means of effectually correcting irregularity).

■ In any event, the records were admissible under the Uniform Business Records as Evidence Act. S.C.Code Ann. § 19–5–510 (1985); *State v. Rich*, 293 S.C. 172, 359 S.E.2d 281 (1987); *State v. Howard*, 295 S.C. 462, 369 S.E.2d 132 (1988), *cert. denied* 490 U.S. 1113, 109 S.Ct. 3174, 104 L.Ed.2d 1036 (1989) (parole records and police fingerprint records admissible). Moreover, the disciplinary records were relevant to Whipple's future adaptability in prison, a matter which was clearly proper for the sentencing jury.[2] *See State v. Howard, supra; State v. Riddle*, 291 S.C. 232, 353 S.E.2d 138 (1987), *overruled in part on other grounds, State v. Torrence, supra.*

## 6. PAROLE ELIGIBILITY CHARGE

■ Whipple requested an instruction concerning his thirty year parole eligibility, in the event the jury recommended a life sentence. Alternatively, he requested the jury be charged that "life" and "death" are to be understood in their plain and ordinary meaning. The court did not give the requested instructions. Whipple now asserts reversible error.

Whipple's failure to object to the charge as given, or to request an additional charge when given an opportunity to do so constitutes a waiver of his right to complain on appeal. *State v. Hudgins*, 460 S.E.2d 388 (S.C.1995) (Davis Adv. Sh. No. 17 at 43); *State v. Hartley*, 307 S.C. 239, 414 S.E.2d 182 (Ct.App.1992). *See also* Rule 20(b) SCRCrimP (party must object to failure to give requested instructions and failure to do so constitutes waiver of issue). Accordingly, we decline to address the issue.[3]

---

**2.** Whipple admitted killing the Victim, and the sentencing jury was clearly aware the state was seeking the death penalty. Accordingly, although the "inmate art" was not relevant, Whipple suffered no prejudice. *See State v. Wyatt*, 317 S.C. 370, 453 S.E.2d 890 (1995).

**3.** Recent opinions of this Court indicate that *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) is inapplicable to a request to charge concerning a defendant's parole eligibility. *See State v. Young*, 319 S.C. 33, 459 S.E.2d 84 (S.C.1995); *State v. Tucker*, 319 S.C. 425, 462 S.E.2d 263 (S.C.1995).

### 7. VICTIM'S CHARACTER

██ Finally, Whipple asserts error in the trial court's refusal, at sentencing, to permit him to introduce evidence of Victim's bad character. Whipple cites *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), contending this evidence was necessary to rebut the State's jury argument concerning the victim's good character. We disagree.

Although Whipple sought to introduce evidence of Victim's character at the guilt phase, and renewed his motion at sentencing, he never contended it was admissible as victim impact evidence under *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Accordingly, the issue is not preserved. *State v. Meyers*, 262 S.C. 222, 203 S.E.2d 678 (1974) (Party may not raise a ground not asserted below on appeal).

In any event, the court committed no error. Whipple proffered testimony that the Victim had told both a boyfriend and friends of her parents that she had used drugs and crack cocaine when she lived in New Jersey, and that she had driven people in Myrtle Beach to an area to buy drugs. Whipple contends evidence of Victim's drug involvement would have demonstrated his connection to her was drug related and that the murder was not premeditated. We disagree.

Contrary to Whipple's contention, the evidence concerning Victim driving people to the Racepath area of Myrtle Beach to purchase drugs would not have reflected badly on her character. On the contrary, the proffered testimony and police report indicated that Victim was afraid the individuals whom she was transporting would harm her and that she wanted to avoid them. The evidence would not, as Whipple suggests, have demonstrated a lack of premeditation. We find the trial court committed no abuse of discretion in refusing this testimony. *State v. Schmidt*, 288 S.C. 301, 342 S.E.2d 401 (1986) (evidence is inadmissible unless it tends to make more or less probable some matter in issue upon which it directly bears); *State v. Groome*, 274 S.C. 189, 262 S.E.2d 31 (1980) (admission and rejection of proffered testimony is largely within the sound discretion of the trial judge). The proffered testimony was not relevant to any issue at guilt phase.

## CONCLUSION

The sentence in this case is neither excessive nor disproportionate to the penalty imposed in similar cases. *State v. Holmes,* 320 S.C. 259, 464 S.E.2d 334 (1995); *State v. Tucker,* 319 S.C. 425, 462 S.E.2d 263 (1995); *State v. Franklin,* 318 S.C. 47, 456 S.E.2d 357, *cert. denied* —— U.S. ——, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995). The convictions and sentences are

`AFFIRMED.

TOAL, MOORE and BURNETT, JJ., concur.

FINNEY, C.J., dissenting in separate opinion.

FINNEY, Chief Justice, dissenting:

After jury selection had begun, the solicitor handed the defense attorneys 479 pages of new discovery materials. Three times the attorneys asked for a twenty-four hour continuance to allow them to review the materials, and three times the judge denied their request, finally giving them approximately five and a half hours, during which time they also needed to prepare their opening statement, and eat lunch. When the time expired, and the case was called for trial, the attorneys understandably did not renew their request. The majority finds in the failure to continue to argue with the judge a waiver; I find the issue properly preserved, and that further argument after the ruling had been made would have been improper. *Cf., State v. Bryant,* 316 S.C. 216, 447 S.E.2d 852 (1994) (where judge admits testimony over objection, counsel is not required to make motion to strike in order to preserve issue for appeal); Rule 17, SCRCrimP ("If an objection has once been made at any stage to the admission of evidence, it shall not be necessary thereafter to reserve rights concerning the objectionable evidence."); Rule 18(a), SCRCrimP ("Counsel shall not attempt to further argue any matter after he has been heard and the ruling of the court has been pronounced.").

The denial of a motion for a continuance will be reversed on appeal only if the trial judge clearly abused his discretion. *State v. Tanner,* 299 S.C. 459, 385 S.E.2d 832 (1989). Where the continuance request is occasioned by the State's untimely

compliance with a discovery request, the defendant is entitled to sufficient time to ascertain the full evidentiary value of the evidence. *Id.* In my opinion, allowing counsel less than one minute per page to review 479 pages of discovery materials such as DNA reports and hospital evaluations of appellant's mental condition is a patent abuse of discretion. This is especially so in this capital case in which the trial had already been delayed two years. *Compare State v. Patterson,* 290 S.C. 523, 351 S.E.2d 853 (1986) (subsequent history omitted) (no reversible error where defense counsel allowed to listen to prosecution witness's taped statement before her direct testimony, and cross-examination postponed until the next day); *State v. Lunsford,* 318 S.C. 241, 456 S.E.2d 918 (Ct.App.1995) (overnight and long lunch recess to review five page statement and short "proffer" not reversible error where judge also offered appellant "as much time as he thought he needed"). That appellant cannot point with any precision to the prejudice he suffered is the inevitable consequence of the insufficient time afforded to him for review of these largely technical documents.

Further, I would hold that where a defendant's request for a jury charge is denied in a pre-charge conference, he need not renew that request after the charge is omitted from the jury instructions in order to preserve the issue for appellate review. *Rogers v. Florence Printing Co.,* 233 S.C. 567, 106 S.E.2d 258 (1958); *cf., State v. Grant,* 275 S.C. 404, 272 S.E.2d 169 (1980). I therefore disagree with the majority's conclusion in Part 6 that appellant has failed to preserve his jury charge requests. On the merits, it is well-settled that the failure to give the "plain meaning" charge as appellant requested is reversible error. *State v. Davis,* 306 S.C. 246, 411 S.E.2d 220 (1991). This error mandates a new sentencing proceeding.

For the foregoing reasons, I respectfully dissent, and would reverse and remand for a new trial.