THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Ted Dean
 Hatcher, Jr., Appellant.
 
 
 

Appeal From Spartanburg County
 Doyet A. Early, III, Circuit Court Judge
Unpublished Opinion No. 2008-UP-256
Submitted May 1, 2008  Filed May 14, 2008
REVERSED AND REMANDED

 
 
 
 Appellate Defender Eleanor Duffy Cleary, of Columbia, for
 Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,
 and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia;
 and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.
 
 
 

PER CURIAM: Ted
 Dean Hatcher appeals his conviction for assault and battery with intent to kill
 (ABWIK), alleging the trial court erred in refusing to charge the jury on the
 lesser included offense of assault and battery of a high and aggravated nature
 (ABHAN).  We reverse and remand.[1]  
FACTS
Hatcher was charged with ABWIK against
 Cedrick Lyles after Hatcher shot Lyles while Lyles was stopped in his car in
 front of Hatchers trailer.  Hatcher claimed he thought he saw Lyles reaching
 for a weapon and shot off his gun in self defense.  
At
 trial, Hatcher testified that he bought crack cocaine from Lyles the night
 before the shooting.  When Hatcher returned home that night, roughly thirty
 minutes later, he saw a car parked outside his trailer with its inside lights
 on.  As he drove closer, he saw Lyles run from the back of the car and jump in
 his drivers side door.  Hatchers girlfriend, Ferrin Brown, was standing at the
 back of the car crying.  Lyles asked Hatcher to get in the car and talk.  He
 told Hatcher that Brown loved Hatcher and would never do nothing behind
 [Hatchers] back.  Lyles said he knew the two had been arguing and wanted to
 help them work through their problems.  Hatcher got out of the car and Lyles
 followed him into the trailer.  
Inside,
 Brown was sitting in the bathroom crying.  Lyles said he was going to help them
 talk through this, but Hatcher told him he did not need help and asked Lyles to
 leave.  After Lyles left, Hatcher went back to Brown, slapped her, and asked
 her what was going on.  Eventually, Brown told him that she had been raped but
 refused to go to the hospital.  
Hatcher
 testified that he called Lyles several times the next day and told him he knew
 what had happened the night before and he was going to whoop his ass.  Lyles
 said he would come by Hatchers house and take care of you both.  Hatcher
 testified he thought Lyles was going to shoot him and Brown, so he borrowed a
 gun from a friend for protection.  He also said he knew Lyles carried a gun and
 had seen him with a weapon two weeks earlier.  
Hatcher
 testified when Lyles arrived later that day, Lyles stopped his car and said
 whats up.  Hatcher then saw him lean forward in his drivers seat and reach
 like this.  Hatcher said he thought Lyles was reaching for a gun, so, without
 taking aim, Hatcher began to shoot.  After firing the gun, Lyles put his foot
 on the gas and drove straight into the woods.  Hatcher ran back to his trailer
 and told his father what happened.  Hatcher left his trailer, threw the gun in
 the lake, and went to his brothers house where the police found him the next
 day.  
According to Lyles, Hatcher called and told him to come by the
 trailer. Hatcher told Lyles that he needed to talk and he had something for him.
  As Lyles approached Hatchers house, he saw him about 50 yards from his
 driveway.  Lyles pulled over, rolled down his window, and greeted Hatcher. 
 Lyles testified Hatcher accused him of messing with Brown and began shooting.  Lyles
 was shot several times, sustaining gunshot wounds to his left upper abdomen,
 left eye, left neck, and left shoulder.  Lyles lost control of his car and it
 veered off the road.  Lyles claimed Hatcher went through his pockets and then
 ran from the scene.  Lyles got out of the car and managed to walk until an officer
 saw him in the street covered in blood.  
At trial, Hatcher requested the judge charge the jury on ABHAN as
 a lesser-included offense of ABWIK.  The judge stated that he would not charge
 the lesser-included offense because there wasnt any fist and there wasnt
 anything else other than a .38 shot five times.  He concluded, either he
 acted in self-defense or intent to kill the guy and refused to charge ABHAN.  The
 judge charged the jury with ABWIK, possession of a weapon during the commission
 of a crime, and the defense of self-defense.  The jury found Hatcher guilty of
 ABWIK and possession of a firearm.  The judge sentenced Hatcher to twenty years
 for ABWIK and five years for possession of a firearm.  This appeal follows.  
STANDARD OF REVIEW
If any evidence supports a jury charge,
 the trial judge should grant the request.  State v. Brown, 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct. App. 2004) 
  The law to be charged is determined from the evidence presented at trial.  State
 v. Patterson, 367 S.C. 219, 231, 625 S.E.2d 239, 245 (Ct. App. 2006).  Due process requires that a lesser
 included offense be charged when the evidence warrants it but only if the
 evidence would permit a jury rationally to find the defendant guilty of the
 lesser offense.  State v. Small, 307 S.C. 92, 94, 413 S.E.2d 870, 871
 (Ct. App. 1992).    
In
 criminal cases, this court sits to review only errors of law.  State v. Wood, 362 S.C. 520, 525, 608 S.E.2d 435, 438 (Ct. App. 2004).   To
 warrant reversal, a trial court's refusal to give a requested jury charge must
 be both erroneous and prejudicial to the defendant.  Patterson, 367
 S.C. at 232, 625 S.E.2d at 245.  
LAW/ANALYSIS

Hatcher
 argues the trial judge erred by refusing to charge the jury on ABHAN.  We agree.
Initially, we address the States contention that Hatcher failed
 to preserve this issue for appeal because he offered a bare bones jury charge
 and did not object to the trial judges jury instructions.  We disagree.  
In State v. Johnson, the South Carolina Supreme Court
 clarified it is the long-standing rule that where a party requests a jury
 charge and, after opportunity for discussion, the trial judge declines the
 charge, it is unnecessary, to preserve the point on appeal, to renew the
 request at conclusion of the courts instruction.  333 S.C. 62, 64 n.1, 508
 S.E.2d 29, 30 n.1 (1998).  The court reiterated the rule because it found its
 earlier decision in State v. Whipple, 324 S.C. 43, 476 S.E.2d 683 (1996)
 was misinterpreted.  Whipple was being read as indicating that where a
 partys jury charge objections or requests are denied on the record after a
 pre-charge conference, the party must renew those objections or requests
 subsequent to the court's instructions to the jury.  Id.  In Johnson,
 the court explained because there was no on-the-record discussion regarding
 whether the judge would give Whipples jury charge, there was no on-the-record
 ruling as to whether the court would give a certain charge.  Id. 
 Therefore, Whipple failed to preserve the issue by failing to object to the
 judges charge as given.  Id.  Conversely, the court found Johnsons
 request to charge was denied on-the-record after an opportunity for
 discussion.  Therefore, the court found Johnson was not required to renew his
 request at the conclusion of the charge.  Id. 
As in Johnson, Hatcher made an on-the-record request for an
 ABHAN charge.  The court afforded an opportunity for discussion, eliciting discussion
 from both Hatcher and the Solicitor.  After the discussion, the trial judge
 stated, Im not going to charge the lesser included offense.  The judge
 proceeded to charge the jury on ABWIK, possession of a weapon during the commission of a crime, and the
 defense of self-defense.  We
 find Hatcher was not required to renew his request at the conclusion of the
 charge and therefore, this issue is preserved for our review.     
We next address
 whether the trial judge erred in refusing to charge the lesser included offense
 of ABHAN.  ABWIK is an unlawful act of a violent nature to the person of
 another with malice aforethought, either express or implied.  State v. Foust,
 325 S.C. 12, 14, 479 S.E.2d 50, 51 (1996).  Malice is a required element of
 ABWIK.  State v. Kinard, 373 S.C. 500, 504, 646 S.E.2d 168, 170 (Ct.
 App. 2007).  With the exception of the death of the victim, each element of
 murder must be proven beyond a reasonable doubt in order for a jury to convict
 a defendant of ABWIK.  Kinard at 503, 646 S.E.2d at 169.  Malice
 aforethought, which encompasses acts committed with extreme recklessness, satisfies
 the general intent required for a conviction of ABWIK.  Id. at 505-06,
 646 S.E.2d at 170.
On the other hand, ABHAN is an unlawful act of violent injury accompanied by circumstances of
 aggravation.  State v. Fennell, 
 340 S.C. 266, 274, 531 S.E.2d 512, 516 (2000)  Circumstances of aggravation
 include the use of a deadly weapon, infliction of serious bodily injury, intent
 to commit a felony, great disparity between the ages and physical conditions of
 the parties involved, and a difference in the sexes.  Id. at 274, 531
 S.E.2d at 516-17.  The absence of malice is not a required element of ABHAN,
 and the fact that a defendant acts with malice does not preclude a finding of
 ABHAN.  State v. Tyler, 348 S.C. 526, 530-31, 560 S.E.2d 888, 890
 (2002).  
In
 determining whether the evidence required the judge to charge the jury on
 ABHAN, this court must view the facts in the light most favorable to the
 defendant.  See State v. Byrd, 323 S.C. 319, 321, 474
 S.E.2d 430, 431 (1996).  In this case, examining the evidence in a light most
 favorable to Hatcher, a jury could conclude that he is guilty of only ABHAN.  Hatcher
 testified that he stood 3-4 feet away from Lyles car and did not aim when he
 shot the gun.  He then stated he initially did not know whether he hit Lyles
 because he did not aim the gun at Lyles, rather he just pulled the gun and
 fired it.  Further, Lyles sustained gunshot wounds to various parts of his
 body, indicating Hatcher may have simply been shooting in Lyles direction in
 an attempt at self preservation whether legally justified or not.  While the
 jury ultimately rejected the issue of self-defense, that determination is not
 dispositive of the issue.  Furthermore, while the evidence in this case may
 give rise to an inference the shooting was committed with malice, the inference
 is a permissive one which the jury is free to accept or reject.  See State
 v. Pilgrim, 320 S.C. 409, 415 n.3, 465 S.E.2d 108, 112 n.3 (Ct. App. 1995), overruled on other grounds by State v. Foust, 325 S.C. 12, 479
 S.E.2d 50 (1996).  
Accordingly,
 because there is evidence to support an ABHAN instruction, we find the trial
 judge erred in failing to charge the lesser-included offense of ABHAN and that
 the appellant was prejudiced by this error.  Furthermore,
 in reversing Hatchers ABWIK conviction, we must also reverse the conviction
 for possession of a firearm during the commission of a violent crime because
 the former conviction is a prerequisite to the latter.  E.g., S.C. Code
 Ann. § 16-23-490(E) (2003) (noting the additional punishment for possession of
 a firearm during the commission of a violent crime may not be imposed unless
 the defendant is convicted of the underlying violent crime); State v. Taylor, 356 S.C. 227, 235 n.4, 589 S.E.2d 1, 5 n.4 (2003) (noting defendant's
 conviction for possession of a weapon during the commission of a violent crime
 must be reversed where the court was reversing defendant's murder conviction).  Based
 on the foregoing, Hatchers convictions are hereby
REVERSED
 AND REMANDED.
WILLIAMS,
 THOMAS, and PIEPER, JJ., concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.